## KEFFER v. STATE.

HOMICIDE—CONTINUANCE—JURY—APPEAL AND ERROR—EVIDENCE—SENTENCE—INSTRUCTIONS.

1. A defendant in a criminal case, who, having had ample time, has failed to take the deposition of a witness residing in another state, is not entitled to a continuance on the ground that the witness had promised to attend the trial.

2. A criminal case having been continued at one term of court to allow the defendant an opportunity to prepare for trial, it is not error at the next term, six months later, to refuse a further continuance applied for on the ground of the absence of witnesses residing in another state, where there has been no effort to secure their testimony by deposition, nor to secure their attendance by legal process, other than by sending them subpoenas having no extra-territorial force, defendant having relied upon their promise to attend.

3. Where absent witnesses reside out of, and are beyond, the limits of the state, a party applying for a continuance on the ground of their absence should state, in his affidavit, the grounds of his expectation of obtaining their testimony. in the event of a continuance, so that the court may determine whether there is reasonable ground for believing that it may be obtained.

4. An affidavit for continuance filed by a defendant in a criminal case does not sufficiently show the probability of procuring the testimony of absent witnesses residing in other states to entitle such defendant to a continuance, which states that the defendant has no means to procure their attendance, or depositions, but that, if means are provided for taking the depositions, they can be taken and presented at the next term; the defendant having already permitted a delay of six months without availing himself of the statutory provision allowing him witnesses at the expense of the county.

5. Alleged error in overruling challenges to jurors is not entitled to be considered where the transcript of the examination of the jurors is not embraced in the bill of exceptions, nor identified by the certificate of the judge.

6. In a homicide case where the sole defense is insanity, an opinion formed by a juror in respect to the undisputed and uncontroverted facts that the person alleged to have been killed was dead; that he came to his death by violence, and not from natural causes or his own hand, and that he came to his death at the hands of the accused on trial, would not constitute a disqualification of such juror.

7. A juror who states that he had formed an opinion as to the guilt or innocence of an accused on trial for murder from what was told him by persons present at the coroner's inquest, and by witnesses who brought the prisoner to the jail, not, however, eye witnesses to the crime, which opinion it would require evidence to remove, but that he did not know the accused, and could give him a fair and impartial trial, is not disqualified where the sole defense is insanity when the alleged crime was committed, and the juror was not questioned as to his opinion upon that question, nor was such defense disclosed when the jurors were examined, and the material fact that the deceased came to his death at the hands of the accused was not disputed, nor a controverted issue in the trial; although in many cases under different circumstances he would appear to be disqualified.

8. In a criminal prosecution the state is not required, on its case in chief, to give in evidence previous statements of the defendant by which he has sought to exculpate himself, if it does not believe them to be true, but may introduce them in rebuttal of the testimony of the defendant differing from such previous statements.

9. A defendant on trial for murder having testified that he had no knowledge or recollection of the events connected with the killing, it was competent for the prosecution in rebuttal to introduce evidence of previous statements of the defendant to the effect that he had killed the deceased, that he was not drunk when he had done so, and giving the details of the killing, attempting thereby to excuse or justify his act; the evidence having been admitted for the purpose of rebutting the testimony of the defendant as to his mental condition at the time of the killing; and it was not necessary to lay the foundation for impeachment to render such evidence admissible.

10. Statements of the defendant having been properly admitted in rebuttal, whether the defendant shall be permitted to

explain the making of such statements, is a matter within the discretion of the court.

11. Alleged error in refusing permission to a defendant in a criminal trial to explain his making of statements introduced by the prosecution in rebuttal is not available unless the bill of exceptions contains a showing of what the testimony in explanation of such statements would have been, or its materiality, since it cannot be assumed that it was material or important.

12. Error of the District Court in refusing to suspend the execution of the death sentence upon defendant's application and notice of his intention to institute proceedings in error was not prejudicial where such execution was suspended by the Supreme Court, or one of the justices thereof.

13. Failure of the court, on pronouncing sentence, to inform a convicted defendant of the verdict, and to inquire whether he had anything to say why judgment should not be pronounced against him, would not in any case be ground for new trial, but only that the judgment be vacated in order that the statute in that particular might be complied with.

14. Where the court, when pronouncing sentence, omitted to inform the convicted defendant of the verdict, and to inquire whether he had anything to say why judgment should not be pronounced, but afterward recalled the defendant and then informed him of the verdict and propounded the statutory interrogatory, the omission to do so at the time of sentence was a mere irregularity not affecting defendant's substantial rights.

15. In criminal causes the instructions are not required to be numbered and signed by the judge, and, therefore, the failure to do so is not error.

16. The court cannot consider an alleged error based upon certain alleged remarks of the trial judge during the examination of a person as to his qualification to sit as juror in the case, where the brief does not refer to the portion of the record showing such remarks, and that such remarks were made is not disclosed upon an examination of the record, although the matter is stated in the motion for new trial as one of the grounds therefor; since the

court is not authorized to infer from the statement contained merely in the motion for new trial, that the remarks were made as alleged.

17. In a homicide case, evidence that the deceased had money, and that the accused knew or had means of knowing it, is relevant as tending to show a motive for the crime.

18. Whether evidence, in a case of homicide, that the deceased had money, and that the accused knew or had means of knowing it, is so remote as to be incompetent, depends upon the circumstances of the case.

19. In this case evidence tending to show that larceny from the person of the deceased accompanied the homicide, no matter how small the amount, was competent and specially important as tending to rebut the claim of the accused that the killing was merely the result of an insane frenzy without motive or purpose.

20. The weight of the evidence is a question for the jury; and to be competent it is not necessary that evidence offered be conclusive or satisfactory.

21. The evidence tended to show that the accused had reason to believe, from statements of the deceased, that the latter had $200 in his possession; that after the homicide a five dollar bill was missing from his person which he had a short time before, and which, considering the isolated place where he lived, it was improbable he had disposed of; that accused had no money the afternoon preceding the homicide, but after the murder he had a five dollar bill, which was unaccounted for unless he obtained it from the deceased. The remainder of the money of deceased appears to have been represented by checks, which were not taken. *Held,* that the evidence was competent and properly admitted, although there was other evidence tending to show that some unknown person had visited the place after the homicide and after the accused had gone.

[Decided August 20, 1903.]                    (73 Pac., 556.)

ERROR to the District Court, Fremont County, HON. CHARLES W. BRAMEL, Judge.

James Keffer was convicted of murder in the first degree, and sentenced to suffer the death penalty. He prosecuted

proceedings in error. The material facts are stated in the opinion.

*E. H. Fourt* and *D. A. Preston,* for plaintiff in error.

The motion for continuance should have been granted; there was no finding of lack of diligence, and subpoenas had been issued in ample time, and the defendant was justified in relying on the promises of the witnesses to attend the trial. (People v. Brown, 46 Cal., 103; People v. Dodge, 28 Cal., 445; Brown v. State, 65 Ga., 332; Corbin v. People, 131 Ill., 615; Sutton v. People, 119 Ill., 250; Spencer v. State, 8 Blackf., 281; Gross v. State, 2 Ind., 135; 65 Pac., 945.)

The accused was entitled to a trial by an impartial jury. (Const., Art., 1, Secs. 6, 7, 8, 10; Art. 6, Amendments U. S. Const.) The examination of the jurors disclosed that a majority were either biased or prejudiced, and the challenges of such jurors were overruled. An opinion formed from any source other than newspaper reports and rumor disqualifies a juror; and the opinions formed by several of the jurors were such as clearly to disqualify them. (State v. Hultz, 106 Mo., 41; Young v. Johnson, 25 N. E., 363; Walker v. State, 1 id., 856; People v. Shinfelt, 61 Mich., 237; Thurman v. State, 43 N. W., 404; People v. McQuade, 110 N. Y., 284; Vance v. State, 56 Ark., 402; King v. State, 89 Ala., 146; Dugle v. State, 100 Ind., 259; Brown v. State, 70 Ind., 576; Wood v. State, 134 Ind., 35; Bryant v. State, 7 Wyo., 311; Carter v. Ter., 3 Wyo., 193; Black v. Ter., id., 313.) If there is any doubt as to the ability of a juror to render an impartial verdict, he should be excluded. (Holt v. People, 13 Mich., 224.) And the statements of the jurors must be taken as true where there is no finding of fact by the court. The existence of a state of mind in the juror evincing enmity against or bias in favor of either party is a ground for challenge for cause. (R. S. Wyo., Sec. 3641.) Under similar statutes it has been held that

an opinion upon newspaper reports were such as to disclose actual bias and prejudice. (Rose v. State, 2 Wash., 310; State v. Coella, 3 id., 99; State v. Beatty, 25 Pac., 899.)

The admissions of the defendant on trial as to the events of the alleged killing admitted in rebuttal were in the nature of confessions, and the defendant was entitled to explain them. (Const., Art. 1, Sec. 10; State v. Hunsaker, 16 Or., 497; Hire v. State, 144 Ind., 359; Ry. Co. v. Noel, 77 Ind., 122; Merrick v. State, 63 Ind., 327; People v. Kindra, 102 Mich., 147; Ransholton v. State, 144 Ind., 250.)

The refusal to stay execution was error. (R. S. Wyo., Sec. 5394.) The recalling of the defendant to inform him of the verdict and inquire whether he had anything to say why judgment should not be pronounced after sentence had been pronounced without such statutory formalities having previously been complied with did not cure the error. The defendant was therefore denied a substantial right. (R. S. Wyo., Sec. 5390; 1 Bish. Cr. Proc., Sec. 1293; State v. Trexevant, 47 Am. Rep., 840; McCue v. Comm., 21 id., 7.)

The failure to number and sign the instructions was prejudicial error. (R. S. Wyo., Sec. 3644.) The evidence concerning money and checks found on the person of the deceased, and that possibly five dollars may have been taken from his person, was not competent, in view of the fact that some person other than the defendant had been at the place, who had evidently stolen there and hidden a shotgun, and the fact that the money the deceased had referred to in statements before the killing was the checks found on his person after his death. The evidence was too remote to prove motive on the part of the accused.

The court, during the examination of a juror who had stated that he was opposed to capital punishment, remarked: "If a man assassinates another, you wouldn't favor hanging the assassin?" The remark or question was

calculated to impress on the minds of the jurors that this was a case of cold-blooded assassination, and quite different from the usual case where capital punishment was administered, and it seemed to suggest that a juror might make an exception in the case then on trial. Such a remark in a case about which there is an intense public feeling is well calculated to intensify the feeling and to indicate that the court desires a verdict in which the death penalty may be inflicted. The remarks aforesaid constituted such error as to entitle the defendant to a new trial. (State v. Coella, 28 Pac., 28; People v. Matthai, 67 Pac., 694; Hughes Cr. Law, p. 747.)

*J. A. VanOrsdel,* Attorney General, for the State.

Information was filed in this case during the December term of the District Court. Counsel was appointed to defend the accused. He was arraigned and, on motion of the defendant, the case was continued until the July term. That term opened July 7th, and not until the 24th of that month was the motion for continuance filed that was overruled. The court exercised a sound discretion and properly declined to grant a continuance. A postponement to procure the testimony of witnesses who are beyond the jurisdiction of the court will not be granted where, although having had adequate opportunity, the applicant has used no diligence to procure their deposition. (State v. McCoy, 111 Mo., 517; Haile v. State (Tex.), 43 S. W., 999; State v. Farrington, 90 Ia., 673; State v. Lewis, 56 Kan., 374; People v. Ah Lee Doon, 97 Cal., 171; Brittain v. State (Tex.), 40 S. W., 297; State v. Murphy, 48 S. C., 1; State v. Walker, 13 Tex. App., 618; 77 Ga., 98; State v. Duffy, 1 So., 184; State v. Files, 3 Brev., 304; Deane v. Scriba, 2 Call (Va.), 415.)

The whole subject of the qualification of jurors in criminal cases has undergone a radical change in recent years. It is quite generally held now that the matter is largely within the discretion of the trial court. The great test

seems to be whether the juror, notwithstanding what he may have heard or read regarding the case, can say that, under the law and the evidence, he can give the accused a fair and impartial trial. Under our statutes, it is not ground of challenge that the juror has formed an opinion on newspaper reports, or on conversations with persons who purported to know the facts, or even with persons who afterwards are used as witnesses, if the opinion so formed is not one which will bias and prejudice the juror so as to render it impossible for him to try the case fairly and impartially upon the law and the evidence. (Bryant v. State, 7 Wyo., 311; Staup v. Comm., 74 Pa. St., 458; 75 id., 424; 76 id., 414; 79 id., 308; Stokes v. People, 53 N. Y., 164; Carson v. State, 50 Ala., 134; Anderson v. State, 14 Ga., 709; Wright v. State, 18 Ga., 383; State v. Fox, 25 N. J. L., 566; State v. Hinkle, 6 Ia., 380; Baxter v. People, 8 Ill., 368; State v. Sater, 8 Ia., 420; State v. Brown, 4 La. Ann., 505; State v. Davis, 29 Mo., 391; State v. Ellington, 7 Ired., 61; Comm. v. Webster, 5 Cush., 295; Holt v. People, 13 Mich., 224; O'Connor v. State, 9 Fla., 215; Fahnestock v. State, 23 Ind., 231; Reynolds v. U. S., 98 U. S., 145; State v. Meeker, 54 Vt., 112.) Every juror in this case swore that, notwithstanding his opinion, he would not be prevented thereby from giving the defendant a fair and impartial trial under the law and evidence. The answers of some of them possibly brings the court close to the border line of judicial discretion.

The previous admissions of the defendant were competent in rebuttal of his testimony that he was unconscious of the events of the killing. No offer to prove anything by the prisoner was made after the introduction of that evidence. He merely claimed the right to explain how the statements were made. He was not recalled to the witness stand, nor were any questions asked him as to such statements. There is, therefore, nothing on that point for the court to consider.

The stay of execution should have been granted by the trial court, but the defendant was not prejudiced, since the

stay was allowed by the Supreme Court. The omission to comply with the statute as to interrogating the defendant at the time of the sentence was noticed a few hours after the sentence, and the statutory questions were then propounded. Upon his stating that he had nothing to say, the court then announced that the judgment as theretofore pronounced would stand as the judgment of the court. That was a proper proceeding. (Bish. New Cr. Proc., Sec. 1293.) Had the court failed to recall him as aforesaid, it might have been necessary to remand the case for that purpose, and that purpose alone. But, having recalled him and complied then with the statutory requirement, the error was cured.

The defendant was not prejudiced by the failure to number and sign the instructions. They are all before the court. No exceptions were taken to them, and all objections to them, if any, are waived. It was not error to admit the evidence of the possession of money by the deceased. (Kennedy v. People, 39 N. Y., 245; State v. Donnelly, 130 Mo., 642.) The alleged improper remarks of the court do not appear in the record, and cannot be considered.

CORN, CHIEF JUSTICE.

The plaintiff in error was found guilty of murder in the first degree and sentenced to death. The defense was, that the accused was insane and not legally responsible at the time the deceased was slain.

The first error assigned is that the court improperly denied the application of the accused for a continuance. He sets out in his affidavit that by reason of injuries received about the head some years before he had since been at times insane and, under certain circumstances, unconscious of his own acts and entirely irresponsible, giving the names of a number of witnesses by whom these facts can be proved and their places of residence in Idaho, Oregon and California. In further support of his motion, an affidavit of

one of his counsel states that three of these witnesses had promised to be in attendance at the trial in June, but that they had all failed to attend, one for the reason that he was sick in Los Angeles and unable to make the journey; that he had sent a subpoena to another which was returned with the endorsement of the witness that he did not receive it in time to come; and that he had sent a subpoena to the third, which was returned through the mail as not called for; that he had no means to secure their attendance or take their depositions, but that if the cause should be continued and means provided for taking such depositions they could be taken and presented to the court at the next term.

There was no error in refusing the continuance. The case had been continued in December upon the ground that the defendant had not had time to prepare for trial, and this was an application nearly six months afterwards upon practically the same ground. The subpoenas had no extra-territorial force and the attendance of the witnesses could not be obtained by that means. No effort beyond this appears to have been made to secure their attendance or their testimony by any legal process. The defendant chose to rely upon their promise to attend and he took the risk that they would be present. In the opinion by Judge Brewer in Campbell v. Blanke, 13 Kan., 62, the court say: "The deposition of this witness was not taken, nor any effort made to take it. The affidavit alleges that the witness agreed to be present, but failed, as affiant is informed and believes, on account of sickness. This is not a showing of sufficient diligence. The law will not compel the attendance of a witness from an adjoining county. His attendance is purely voluntary, and a party relies upon such voluntary appearance at his peril. At least such is the general rule, and this case presents no exceptions." And in an Indiana case the court say: "One of the witnesses named in the affidavit was a resident of the State of Illinois, and it was the duty of the appellant to have taken her deposition. It was carelessness on his part to rely on her prom-

ise to be in attendance at the trial. Where a party desires
the testimony of a witness not within the jurisdiction of
the court, he must take the deposition of the witness, for
he cannot have compulsory process to compel attendance,
and he has no right to have a continuance, upon the ground
that the witness has promised to attend, and will attend at
a future term." (Marks v. The State, 101 Ind., 353.) · And
this rule is supported by the great weight of authority.
(State v. Cross, 12 Ia., 66; Day v. Gilston, 22 Ill., 103;
Langener v. Phelps, 74 Mo., 189; R. R. Co. v. Barnell,
94 Ga., 446; 4 Ency. Pl. & Pr., 862.) Our statute provid-
ing for the postponement of a trial on account of the ab-
sence of evidence and requiring that the affidavit shall show
that due diligence has been used to obtain it, applies alike
to civil and criminal cases. There is also provision for
taking the deposition of a non-resident witness by the de-
fendant in criminal cases and for making it competent evi-
dence if the witness fail to appear at the trial.

But in another particular the showing is altogether insuf-
ficient. The statute requires that the affidavit shall show
the probability of procuring his testimony within a reason-
able time. The defendant in his affidavit states generally
that the testimony can be procured at the next term of the
court. If the witnesses were within the jurisdiction of the
court this showing might be deemed sufficient, as the
court could have seen that they were amenable to its pro-
cess and their attendance could probably be compelled.
But it is otherwise where they are beyond the limits of the
State, as in such a case the party applying for a continuance
should state the grounds of his expectation of obtaining
their testimony, so that the court may determine whether
there is a reasonable ground for believing that it may be
obtained. (Eubanks v. The People, 41 Ia., 486; Perteat
v. The People, 70 Ill., 171; Richardson v. The People, 31
Ill., 170; 4 Ency. Pl. & Pr., 882.) And the affidavit of
counsel does not strengthen the application in this partic-
ular. He states that he has no means for the purpose, but

that if means are provided for taking the depositions, they can be taken and presented at the next term. He does not state that he has any expectation that means will be provided. The statute provides that, upon the proper showing, a defendant may have his witnesses at the expense of the county. But if this was the reliance of the defendant he had already suffered some six months to pass without availing himself of the statutory provision. The application may be made either to the court or to a judge in vacation. There was no error in denying the motion for continuance.

It is further claimed that the court erred in overruling defendant's challenges to a number of the jurors. The transcript of the examination of the jurors is not embraced in the bill of exceptions, is not identified by the certificate of the judge, and consequently under the repeated decisions of this court this matter is not before us for consideration. But, in view of the fact that this is a capital case, we have carefully examined the errors complained of with a view to ascertain if in fact the defendant was deprived of a trial by an impartial jury. One juror testified that he had formed an opinion as to the guilt or innocence of the defendant based upon what was told him by men who were at the coroner's inquest and by those who brought the prisoner to jail, witnesses in the case; that it would require evidence to remove such opinion, and that, if taken as a juror, he would go into the trial with that opinion still in his mind; that these persons had not undertaken to detail to him what had been testified to before the coroner, but had only stated to him what they understood to be the facts; that he had a bias or prejudice in the case, and that he could not go into the trial without such bias or prejudice; but he explained that what he meant by bias or prejudice was only the opinion which he had formed; that he did not know the accused, and that his bias or prejudice was as to the crime and was not a personal feeling; that he thought he could give the defendant a fair and impartial trial, but not as well as in a case which he had never heard anything

about; that he had no other or different feeling against the defendant than he would have against any other stranger charged with the same crime. The juror referred to, we think, was disqualified, if any of the panel were, and we think that in many cases he would appear to be disqualified by his answers.

But in this case there were no eye witnesses to the transaction but the deceased and the defendant. It occurred at a ranch, used as a stage station and occupied only by them, the deceased being employed as stock tender for the stage company. On the night of the 19th of December they returned to the ranch together from a freighter's camp about a quarter of a mile away, and the evidence tends to show that they were both more or less under the influence of liquor when they left the camp. About 4 o'clock next morning the defendant appeared at a village or settlement about four miles away very much intoxicated, and stated that he had killed the stock tender; that the latter had attacked him with a Winchester rifle and fired two shots at him, showing two places in his coat which he said the bullets had torn; that he seized a shotgun and fired both barrels over his shoulder as he ran out of the house, and that he thought he had killed him, as he heard him groan. An examination of the premises showed that Warren, the stock tender, had been shot in the face, the charge going through the head, carrying away the left side of the mouth and moustache and some of the teeth upon the left side, and also the back part of the skull and portions of the brain. In the pillow on the cot in which Warren slept was a depression such as might be made by a head resting upon it, and in this depression were found parts of the bone from the back of the head and several battered shot. On the outside of the bed covering, which was turned down toward the foot when found, and at the upper end, were found a portion of the moustache and some teeth. The body was lying on the floor, the head in a pool of blood. Some six inches nearer the cot was another pool of blood and be-

tween the two was a streak of blood with some brain matter as if the body had been dragged across. The physicians state, and it is evident, that death was instantaneous. In the palm of the left hand and adhering to it were some blood and brain matter and some shot, as if the head might have been resting upon the hand when the shot was fired. The Winchester rifle was resting in the right hand, the palm was up and the fingers partially closed. There was blood upon the hand, but none upon the rifle. There was an empty shell in the chamber and three loaded shells in the magazine. The empty shell was corroded, as if fired some time before, and a witness testified that, some two or three months before, he had fired the rifle and left it with the empty shell in the chamber and three loaded cartridges in the magazine, the empty shell being left in the chamber at the suggestion of Warren that the gun worked better when left in that condition. There was evidence that a short time before the deceased had made remarks in the presence of the accused indicating that he had a considerable sum of money in his possession and on the day before had exhibited a five dollar bill in his presence. On the afternoon of the 19th the defendant had stated that he had no money; on the morning of the 20th he was treating to the drinks, using a five dollar bill for the purpose. Upon an examination after the killing there was found in the clothing of deceased and in his trunk $205.50 in "checks," but no money except five or ten cents in silver.

The sole defense of the accused was that ever since he received the injuries already referred to, whenever he drank whisky he had no knowledge or consciousness of what he was doing; that from the time he drank the whisky in the freighter's camp on the evening of the 19th until he woke up in the Lander jail, two days afterwards, he had no knowledge or recollection of anything that may have occurred during the interval. Under these conditions, is there anything in the examination of the juror which discloses that he had such an opinion as disqualified him? That

Warren was dead was a fact necessary to be proved by
the State and essential to a verdict of conviction. But the
fact was notorious, undisputed and not a controverted
issue in the trial. It will not be contended that an opinion
of the juror upon that question, no matter how firmly
fixed or from what source derived, would be a disqualifica-
tion. Equally essential was the fact that the deceased came
to his death by violence and not from natural causes or by
his own hand. But this likewise was notorious and undis-
puted. And so as to the fact that the deceased came to
his death at the hands of the accused. That the juror had
formed an opinion as to any or all of these essential ele-
ments in the case for the State was not important or ma-
terial as affecting his qualification. But the one question
to be tried was whether, when the defendant slew the de-
ceased, he was sane and legally responsible for his acts.
Nothing in the entire examination of the panel directs at-
tention to this question. There is nothing in the record to
indicate that any member of the panel had an opinion upon
that, the sole question in the case, or that he knew that such
defense would be set up or had any opinion or information
in reference to the sanity of the accused, or that it had ever
been questioned. It is quite true that, when analyzed, a
statement of belief in the guilt of the accused involves a
belief in his sanity. But there is no evidence that the juror
thus analyzed his statement, and the presumption is that
he did not. Sanity is ordinarily and properly presumed in
all the relations of life. Insanity is left out of all calcula-
tions until something occurs to suggest it. There is no
reason to suppose that the statement of the juror is an ex-
ception in this respect, or that he intended to say that he had
formed an opinion as to the sanity of the accused, his in-
sanity not having been suggested.

If the juror, upon the only question at issue in the case,
had formed such an opinion as would disqualify him, and
the examination did not disclose it, it was the right and
duty of the defendant to push the examination further, so

as to make it manifest. The burden was upon him. In an opinion by Judge Cooley in a Michigan case it is said: "The mere statement of a juror that he has formed an opinion is not sufficient to disqualify him. (Moses v. State, 10 Humph., 458.) Further inquiries might possibly have shown that it was of a nature to constitute disqualification; but the defendant did not see fit to make them, and the prosecution was not called upon to enter upon the investigation if the defendant left it imperfect and before he had made out a *prima facie* cause for exclusion. Where the answer of the juror is fairly susceptible of a construction consistent with his impartiality, the challenging party, if he claims that a different construction should be put upon it, should follow up his inquiries so as to elicit the real facts; and he cannot reasonably require that the juror shall be excluded on the ground that the examination, which he has chosen to leave imperfect, does not exclude all inference of bias." (Holt v. The People, 13 Mich., 224.) The theory of the law is that a juror who has formed an opinion cannot be impartial, but every opinion which he may entertain need not necessarily have that effect. And the Supreme Court of the United States say: "It is clear, therefore, that upon the trial of the issue of fact raised by a challenge for such cause the court will practically be called upon to determine whether the nature and strength of the opinion are such as in law necessarily raise the presumption of partiality. The question thus presented is one of mixed law and fact, and to be tried, so far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest. . . . It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial." And the court add: "Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, ex-

cept in a clear case. The affirmative of the issue is upon the challenger. Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside, and it will not be error in the court to refuse to do so." (Reynolds v. The United States, 98 U. S., 145; Carter v. Territory, 3 Wyo., 193.) The accused was under no obligation to disclose the character of his defense at this stage of the proceedings, but, if he chose to hold it in reserve, he cannot complain that the examination did not direct the attention of the jurors to it or disclose whether any of them had formed any opinion in regard to it. We think there was no error in the rulings of the court upon these questions.

After the close of the case upon the part of the defense, in course of which the accused had testified that he had no knowledge or recollection of any of the events connected with the killing, the State introduced evidence over the objection of defendant, to the effect that on the afternoon of the 22d, before the coroner, the accused had stated that he had been drinking, but was not drunk when the deceased was killed; that, when he entered the house, Warren was sitting on the bed with a Winchester in his hand; that he drew it on him and told him to sit down on a chair, where he held him for half an hour or more abusing him; that he waited until Warren's eye was off of him, then leaped up, went around the corner of the table and near the head of the bed, grabbed the shotgun and fired at him, threw the gun away and ran; that he had to do it; that he had taken more from the deceased than any man in his life.

It is objected by plaintiff in error that this evidence was not admissible to impeach the defendant as a witness, the proper foundation not having been laid by calling his attention to it when upon the witness stand; that it was not evidence in rebuttal, but was a part of the case of the prosecution in chief, and, if the court in its discretion permitted the State to reopen its case, the defendant then had the

right to go upon the witness stand to explain the statements testified to.

It máy be conceded that this evidence was not admissible to impeach the defendant as a witness, the necessary foundation not having been laid, and we think it cannot be questioned that in all cases where the court exercises its discretion to permit the prosecution to introduce new evidence in chief after the evidence for the defense has been closed, the defendant must be permitted to rebut such new evidence. But it is clear that it was admitted for the purpost of, and was evidence in, rebuttal. That it tended to impeach the defendant as a witness was a mere incident and did not govern the method of its introduction.

It was not necessarily, or even properly, a part of the case in chief for the prosecution. The State is not required, and it is not its duty, to present in evidence statements of the defendant by which he has sought to exculpate himself, if it does not believe them to be true. And it is not bound to anticipate the defense and, upon its case in chief, introduce evidence in rebuttal of it. (1 Thompson on Trials, 345.) These statements of the accused did not support the case of the prosecution except in the one particular that they contained an admission that the deceased came to his death at the hands of the accused, and of this fact it had other sufficient evidence. But they were in direct and forcible rebuttal of his claim that his mental condition was such that he had no knowledge or recollection of what occurred. And it was in this view that it was admitted. For the record shows that the court instructed the prosecution in the presence of the jury that the evidence went to the mental condition of the accused, and that they could go no further in proving his statements at the inquest.

But counsel insist that the court erred in refusing to permit the defendant to explain how these statements were made. The statute prescribes the order of proceedings in the trial of criminal cases: "The State must first produce

its evidence; the defendant will then produce his evidence; the State will then be confined to rebutting evidence unless the court, for good reasons in furtherance of justice, shall permit it to offer evidence in chief; when the evidence is concluded, either party may request instructions to the jury, etc." (Sec. 5371, Rev. Stat. Wyo.) And this is only declaratory of the established rule. (1 Thompson on Trials, 344; Abbott's T. Brief Criminal Cases, 339.) The production of any further evidence by the defense was, therefore, not a matter of right, but was in the discretion of the court, and there is nothing in the record to show that there was any abuse of discretion. And, even if the court erred in refusing such permission, the error is not available in this court, for the reason that there is nothing in the bill of exceptions to show what the testimony of the witness would have been or its materiality. And it cannot be assumed that it was material or important. (1 Thompson on Tr., 678; Shinners v. Proprietors, 12 L. R. A., 554 (154 Mass.); Hathaway v. Tinkham, 148 Mass., 85; Bank v. Wills, 79 Mo., 275; Jackson v. Hardin, 83 Mo., 175.)

In a case like the present, where the life of a human being is involved, if it was in any way manifested to this court that the accused had been deprived of the opportunity to give a reasonable explanation before the jury of how it was that, notwithstanding his assertion under oath, he had no knowledge or recollection of anything that occurred at or about the time of the homicide, yet nearly three days afterwards, when he was sober and apparently in his right mind, he stated in detail what he claimed to be the facts of the killing and the motives which actuated him at that time, we should be forced to the conclusion that it was such error as would require that the case be sent back for retrial. But not only has this not been shown, but we are convinced from all the facts and circumstances of the case that no such reasonable explanation was, or is, possible.

It is further assigned as error that the District Court refused to suspend the execution of sentence upon defendant's

application and notice of his intention to institute proceedings for the reversal of the judgment against him in the Supreme Court. This was error. The statute expressly provides that upon such notice and application the District Court shall suspend the execution of sentence until the next term of the court. There is no discretion. But it is further provided by statute that when a petition in error is filed in the Supreme Court and summons in error issued thereon the court or one of the judges shall order the suspension of the execution until the proceedings in error shall be heard and determined. This was accordingly done and consequently the error of the District Court was not prejudicial to the accused.

Complaint is also made that the court did not, before pronouncing sentence, inform the defendant of the verdict and ask whether he had anything to say why judgment should not be pronounced against him. But the record shows that the attention of the court having been called to the omission, the defendant was recalled and informed of the verdict and the statutory interrogatory propounded. As the omission would in no case be ground for a new trial, but only that the judgment be set aside, in order that the statute might be complied with, and as the defendant was afterwards given the opportunity to present any reason he might have why sentence should not be pronounced upon him, it was a mere irregularity in no way affecting his substantial rights.

It is further assigned as error that the instructions which were read to the jury were not numbered or signed by the judge or properly identified or marked as allowed. The Code of Civil Procedure, Revised Statutes, 3644, provides that the instructions shall be numbered and signed by the judge. But the corresponding section of the criminal code, 5371, contains no such provision, and, indeed, it does not require that the charge shall be reduced to writing at all, unless requested by one of the parties. Doubtless the object of the provision in the civil code is to prevent mistake or

confusion at the trial and to enable the parties more conveniently to preserve their exceptions. And in any case, civil or criminal, unquestionably the court ought to mark any instruction read to the jury, so as to identify it. But it is not suggested in this case that any of the instructions which were given have escaped or that others have crept into the record. No error is, therefore, apparent.

Objection is made to certain alleged remarks of the judge upon the subject of capital punishment during the examination of one Charles Silber as to his qualification to sit as a juror. The provision of rule 14 of this court, that the briefs "shall refer specifically to the .page and portion of the record where the question under discussion arises," is not complied with by counsel, and an examination of the record does not disclose that the remarks were made or that such a juror was examined in the case. We find that it is enumerated as one of the grounds for a new trial in the defendant's motion, but we are not authorized to infer, from this circumstance alone, that such remarks were made as alleged. The matter is not before us for consideration.

Certain evidence was admitted to the effect that the deceased, in the presence of the accused at the ranch not long before the homicide, stated that he had offered $120 for a certain horse which he pointed out, saying that he would have paid sixty dollars of it by a debt which was due him and would have gone down in his pocket for the balance; also a statement of the deceased that he had saved money at that place and had $200. It is urged that in view of the fact that there was evidence tending to show that some person unknown had visited the place after defendant left on the morning of the 20th and before the officers arrived; that about the amount the deceased stated he had was found, in the form of checks, upon his person and in his sleeping room and only five dollars appeared to have been taken; that the evidence was too remote and it was error to admit it. It is not to be questioned that evidence that the deceased had money and that the accused knew or had means of

knowing it is relevant as tending to show a motive for the crime. Whether it is so remote as to render it incompetent depends upon the circumstances of the case. (Underhill Cr. Ev., 323; Kennedy v. The People, 39 N. Y., 245; State v. Donnelly, 130 Mo., 642.) In this case the evidence tends to show that the accused had reason to believe that Warren had some $200 in his possession; that after the homicide there was missing from his person a five dollar bill which he had a short time before and which, considering the isolation in which he lived, it is improbable he had disposed of. The accused stated he had no money the afternoon before, but after the murder he was in possession of a five dollar bill, and his possession of it is entirely unaccounted for, under the circumstances, unless he obtained it from the deceased. The fact that only five dollars was actually taken is unimportant. The remainder was in checks, and it may be fairly inferred was left for the reason that, in that form, it was to the accused unavailable and useless. But even if the only apparent inducement to the crime had been the paltry sum actually taken, it would not affect the admissibility of the evidence. For, as said in a Minnesota case: "It is always competent, as well as of the greatest importance, to show a motive on the part of the defendant to commit the crime of which he is accused. If there be a motive which can be assigned, the adequacy or inadequacy of it, according to our standard, is a matter of no controlling importance. What would be a motive to one mind might not be to another. Whether a motive is adequate to induce the commission of crime depends on the peculiar circumstances of each case, and the particular character of the defendant." (State v. Lentz, 45 Minn., 177.) In this case evidence tending to show that a larceny from the person of the deceased accompanied the homicide, no matter how small the amount, is competent and specially important, as tending to rebut the claim of the accused that the crime, if committed by him, was merely the result of an insane frenzy without motive or purpose. The fact that someone else visited the premises and the possibility that such person may have committed

the larceny, cannot affect the competency of the testimony. It is not the law that evidence, to be competent, must be conclusive or satisfactory. The weight of it was a question for the jury.

We are convinced that the accused had a fair trial. And this conclusion is fortified by the fact that the charge of the court to the jury was so just and well considered that no exception to any part of it is urged in this court. It is perhaps proper to say further that the character of the charge and the verdict in this case emphasize the wisdom of a brief, temperate and guarded statement of the law in the instructions given on behalf of the State. Attorneys for the State, from a laudable desire to obtain convictions where they believe crime has been committed, sometimes ask, and the court is induced to give, instructions embodying extreme and doubtful statements of the law, thus risking error in the trial and consequent delay, and possibly final defeat, of justice. In clear cases juries in this State have shown themselves willing to return verdicts of guilty; and the State cannot lawfully ask for a verdict except in cases where the proof is clear. Moreover, all questions of morality and justice aside, it is doubtful if, in cases where a conviction ought to follow, a verdict of guilty is more likely to be returned under the influence of such extreme and doubtful forms of statement, than under a charge adhering closely to the well established principles of the criminal law and giving to the accused the full measure of all the presumptions in his favor. These principles and presumptions are only the crystalization of common sense and common experience, and any violation of them may rouse the antagonism of an intelligent jury, intent only upon doing justice.

We find no reversible error in the record, and under all the evidence we have no reasonable doubt of the guilt of the accused. The judgment is affirmed, and the court now appoints the 25th day of September, in the year of our Lord 1903, for the execution of the sentence pronounced by the court below.                                    *Affirmed.*

KNIGHT, J., and POTTER, J., concur.