**Henry Joseph SUMMERS,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

No. 85-148.

Supreme Court of Wyoming.

Jan. 14, 1987.

Before BROWN, C.J., and THOMAS, CARDINE *, URBIGKIT **, JJ., and RAPER, J., Retired.

ORDER ON REHEARING

This case came on before the Court pursuant to Order Granting Petition for Rehearing entered on November 13, 1986, and the Appellant's Brief of Points and Authorities and Appendix I thereto, the Appellee's Response to Petition for Rehearing and Brief in Support of Response to Petition for Rehearing, and the Court having heard the oral arguments of counsel for the parties, and having examined the file and record of the Court and the opinion of the Court in this case which was filed on September 26, 1986, 725 P.2d 1033, and being fully advised in the premises, finds that the opinion of the Court filed on September 26, 1986, should be confirmed in all respects; and it therefore is

ORDERED that the opinion of this Court filed in this case on September 26, 1986, be and the same hereby is, confirmed.

CARDINE, Justice, dissenting.

I join in Justice Urbigkit's dissent and continue to adhere to the reasoning as stated in my dissenting opinion filed in this case on September 26, 1986, Summers v. State, Wyo., 725 P.2d 1033, 1051 (1986).

URBIGKIT, Justice, dissenting, with whom CARDINE, Justice, joins.

In dissent from the decision of the court to confirm the prior opinion, I adopt the well-stated position taken by Justice Cardine in his dissent in Summers v. State, Wyo., 725 P.2d 1033, 1051 (1986).

The membership of this court is informative in evaluation of the present case disposition.

Originally, Justice Robert Rose, thereafter to retire November 1, 1985, was unavailable for oral argument, and Justice John Raper, Retired, was assigned by the Chief Justice to sit on the case. After filing of the opinion of the court in September, 1986, a motion to grant rehearing was approved with the new constituency of the court on a three-to-two vote, in accord with the practice of the court that active members of the Wyoming Supreme Court vote on motions for reconsideration. A motion to have that presently active court then consider the case upon rehearing was defeated three-to-two, by application of a rule that justices who first participate continue upon reconsideration unless not constitutionally eligible. Justice Rose, Retired, had not participated, and consequently could not serve. Justice John Rooney, Retired, had entered private practice, and was precluded by constitutional and statutory reservations from acting as a recalled retired judge.

As a result, Justice Macy has not participated upon reconsideration, and the active membership of the court has divided two-to-two, with the fifth and deciding vote cast by Justice Raper, Retired, and without participation by Justice Macy as the fifth active member now serving on this court.

Note is made of this status since this dissent not only is concerned with the standards, or absence thereof, explicit and implicit in the case in the selection and impaneling of a fair and impartial jury, but in a more long-term contemplation of the structure of the criminal justice and jury trial system of Wyoming.

Oral argument in rehearing was confined by appellant to the refusal of the trial court

---

* Cardine, J., dissenting.

** Urbigkit, J., dissenting with whom Cardine, J., joins.

to excuse juror Drysdale. Juror Drysdale was a co-worker of the decedent, and indicated that she had been the decedent's friend in the course of a congenial long-term employment association. From my review of the transcript, I perceive the issue to be whether the trial court will uphold its obligation to tender the life and liberty of an accused over to demonstrably fair and impartial jurors, or whether the happenstance of selection for jury duty will establish the constituency of the trial jury as the only selection criteria for case service, without regard for the need to determine and demonstrate impartiality and fairness.

Sweetwater County surely affords sufficient population so that a co-worker or friend of a homicide victim need not serve as the determiner of the guilt of the accused killer. The fact that a venireperson *is ordered by the court to be fair* does not comport with the constitutional requirement of a speedy trial by an impartial jury, Art. 1, § 10, Wyoming Constitution, or a speedy and public trial by an impartial jury of the state, Sixth Amendment to the United States Constitution.

The Honorable Richard Feder, of the Florida Circuit Court trial bench states it well in addressing the jury panel before voir dire examination:

> "This is not a game. Our system of justice demands that there be fairness and impartiality on the part of every judge—whether judge of the law or judge of the facts. Remember, justice is spelled J-U-R-Y." Feder, *J-U-R-Y Spells Justice*, Trial, July 1986 at 84, 88.

The constitutionally demanded impartial jury is neither gamesmanship of advocacy nor accident of panel inclusion. In the present precipitous appellate retreat from plainly observed error to harmless error as a justification by many courts for affirmation in the face of procedural misadventures, there should remain two bastions of constitutional protection beyond pre- or post-appellate conception of concluded guilt: the right to an impartial jury, and the right to adequate assistance of counsel.

This case involved an almost dilettante absence of concern for the fair and impartial jury. I particularly reject any implicit conception that it is justified to retain questionable jurors to avoid excusing reluctant venirepersons.

I read the constitutions, state and federal, to establish and require procedural rights in each and every criminal proceeding, not just those where a post-conviction ad hoc determination of guilt by the appellate court is missing. The constitutions give to all accused persons, regardless of an appellate court's predilection to redetermine guilt, the procedural right to a fair trial.

In the absence of explicit waiver in the trial process, I would find no room for trial-court discretion, or this court's application of harmless error to justify the trial court's failure to excuse a venireperson for cause where he or she is obviously involved by pre-appearance events and knowledge. How can these be more apparent than in contemplation of the voir-dire inquiry as involving a friend and co-worker of the homicide victim? The principle is far more important than the temporary expediency of quickly impaneling the final jury for trial.

The standard principle and rule is frequently noted in precedential literature. Our willingness to apply to future recurrences what is stated, not what has often been done, is severely in question.

*Keefer v. State*, 12 Wyo. 49, 73 P. 556, 559 (1903):

> "'* * * It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial.' * * * The accused was under no obligation to disclose the character of his defense at this stage of the proceedings; but, if he chose to hold it in reserve, he cannot complain that the examination did not direct the attention of the jurors to it, or disclose whether any of them had formed any opinion in regard to it."

*Redwine v. Fitzhugh,* 78 Wyo. 407, 329 P.2d 257, 260, 72 A.L.R.2d 664, *reh. denied* 330 P.2d 112 (1958):

"It is fundamental that every litigant is entitled to have his rights fairly and impartially determined, and it is the duty of a trial court to see that a jury of competent, fair and impartial persons is impaneled."

*Krahn v. Pierce,* Wyo., 485 P.2d 1021, 1024 (1971):

" * * * While we will agree that [the prospective juror] in some of his responses was somewhat vacillating, when the voir dire is considered as a whole we cannot say that the trial judge abused his discretion in concluding that the juror would not be unfair or partial in his deliberations."

*Vivion v. Brittain,* Wyo., 510 P.2d 21, 24 (1973):

"Parties to an action are entitled to a fair and impartial jury. *Redwine v. Fitzhugh,* [supra]. The method of determining if a juror is qualified and can reasonably be expected to be fair and impartial is through voir dire examination."

*Lopez v. State,* Wyo., 544 P.2d 855, 860 (1976):

"This Court does not question the fundamental principle that parties to any action are entitled to a fair and impartial jury. *Vivion v. Brittain,* [supra]; and *Redwine v. Fitzhugh,* [supra]. We conclude, however, that under the circumstances of this case the right to raise the question of the impartiality of the jury with respect to this particular matter was waived."

*Chavez v. State,* Wyo., 604 P.2d 1341, 1348 (1979), *cert. denied* 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980):

"[W]e note that the issue here presented to us concerns the propriety of the ruling on a request for *change of venue,* and it is not with reference to the rulings on the challenges for cause and to the question of the fairness and impartiality of the jury members in that context."

*Jahnke v. State,* Wyo., 682 P.2d 991, 999 (1984):

"The object of voir-dire examination of members of the jury panel is to explore the possibility that a prospective juror is subject to a challenge for cause under our statutes quoted above. *Lopez v. State,* [supra]. Voir dire examination is designed to insure the right to a fair and impartial jury by affording the parties the opportunity to discover potential prejudices and biases which would interfere with the ability of potential jurors to fairly decide the case, and the preservation of that right to prove actual bias is an integral portion of the right of a defendant to an impartial jury."

*Jahnke v. State,* supra, 682 P.2d at 1046, 1048, Cardine, J., dissenting:

"The prosecuting attorney's voir dire covered one hundred pages of the transcript of testimony. The voir dire of defense counsel, because of the extreme limitations placed upon him, was reported in just sixteen pages of transcript.

\* \* \* \* \* \*

"Voir dire is probably the least understood and most poorly developed of all the trial skills. * * * In any event, we know that voir dire has an honest and legitimate purpose that no fair-minded person would dispute. It should be the desire on the part of all those involved that the jury selected should be one with as little bias, prejudice, or preconceived notions or opinions about the principles and concepts involved in the particular case as is humanly possible."

*Patterson v. State,* Wyo., 691 P.2d 253, 256 (1984), cert. denied in *Spoon v. Wyoming,* 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 311 (1985):

"Ordinarily, we defer to the action of the trial court in connection with jury selection. [Citations.] *In this instance,* however, the bias or prejudice of [the juror] was definitely evidenced. There is no indication that he realized that the instructions would require proof beyond a reasonable doubt by the prosecution for conviction instead of his avowed inten-

tion to apply the standard of preponderance of the evidence. His stated position left nothing to speculation. It established the *fact* that he would use a preponderance of the evidence standard, and the court's questions relative to following instructions were not sufficiently specific to establish a disposition on the part of the juror to do other than his stated intention. The error is manifest."

*Gresham v. State,* Wyo., 708 P.2d 49, 57 (1985), Rose, J., dissenting:

" 'It is upon the delicate inquiry process called voir dire that the American jury system rests, because it is through this procedure that impartial jurors are disclosed and fair trials are insured. Voir dire means "to speak the truth," and the American jury voir dire has evolved as that intricate process where courts and trial lawyers inquire and communicate delicately and often personally with citizens who are called for jury duty in order that the trial's truth-seeking exercise can proceed and the bias and prejudice which we all have may be revealed and examined.' " Quoting from *Patterson v. State,* supra, 691 P.2d at 261, Rose, J., specially concurring.

*Hopkins v. Laramie County,* Wyoming, 730 F.2d 603, 605 (10th Cir.1984):

"Generally an improper denial of a challenge for cause is error as it forces a party to use a peremptory challenge. [Citation.] The determination of the trial court of a challenge for cause will not be disturbed absent an abuse of discretion. [Citation.] Here, the court gave plaintiffs' counsel a chance to convince him of the propriety of a challenge for cause by asking further questions. He did not take advantage of this opportunity. In the light of this, plaintiffs have shown no abuse of discretion. Plaintiffs have raised no argument that the jury which actually heard the case was biased."

The United States Supreme Court has frequently addressed but irradicably resolved the impartial-jury question:

*United States v. Reid,* 12 Howard 361, 363–364, 53 U.S. 361, 363–364, 13 L.Ed. 1023 (1851):

"The colonists who established the English colonies in this country, undoubtedly brought with them the common and statute laws of England, as they stood at the time of their emigration, so far as they were applicable to the situation and local circumstances of the colony. And among the most cherished and familiar principles of the common law was the trial by jury in civil, and still more especially in criminal cases. And, however the colonies may have varied in other respects in the modifications with which the common or statute law was adopted, the trial by jury in all of them of English origin was regarded as a right of inestimable value, and the best and only security for life, liberty, and property."

*United States v. Wood,* 299 U.S. 123, 133–134, 57 S.Ct. 177, 179, 81 L.Ed. 78 (1936):

" * * * The Sixth Amendment requires that 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury.' The Amendment prescribes no specific tests. The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as matter of law. There is no ground for a contention—and we do not find that such a contention is made—that Congress has undertaken to preclude the ascertainment of actual bias. All persons otherwise qualified for jury service are subject to examination as to actual bias. All the resources of appropriate judicial inquiry remain available in this instance as in others to ascertain whether a prospective juror, although not exempted from service, has any bias in fact which would prevent his serving as an impartial juror."

*Frazier v. United States,* 335 U.S. 497, 511, 69 S.Ct. 201, 209, 93 L.Ed. 187 (1948), reh. denied 336 U.S. 907, 69 S.Ct. 488, 93 L.Ed. 1072 (1949):

" 'Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula.' [*United States v. Wood*, supra, 299 U.S. at 145–146, 57 S.Ct. at 185.]

"This seems to contemplate implicitly that in each case a broad discretion and duty reside in the court to see that the jury as finally selected is subject to no solid basis of objection on the score of impartiality, even though that basis might possibly arise through the working of chance or other lawful factors wholly within the framework of proper procedures for selecting the panel and choosing the jury from it."

*Dennis v. United States*, 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734 (1950): "* * * In both the *Wood* [supra] and *Frazier* [supra] cases this Court stressed that while impaneling a jury the trial court has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor. [Citations.] We reaffirm those principles. In exercising its discretion, the trial court must be zealous to protect the rights of an accused."

"Although each juror asserted that he or she could vote for acquittal without fear of adverse consequences, that cannot be accepted as conclusive evidence of impartiality. The test of bias sufficient to exclude a juror for cause is not what the particular juror believes he could do. Long ago Chief Justice Marshall ruled that a person 'may declare that he feels no prejudice in the case, and yet the law cautiously incapacitates him from serving on the jury; *because it suspects prejudice; because in general, persons in a similar situation, would feel prejudice.*' 1 Burr's Trial 414, 415, 25 Fed.Cas. 14,-692g, at p. 50." (Emphasis added.) *Id.*

at 176, 70 S.Ct. at 527, Black, J., dissenting.

"* * * The constitutional command for trial by an 'impartial jury' casts upon the judiciary the exercise of judgment in determining the circumstances which preclude that free, fearless and disinterested capacity in analyzing evidence which is indispensable if jurymen are to deal impartially with an accusation. * * * It is a judgment founded on human experience and not on technical learning." Id. at 181, 70 S.Ct. at 525, Frankfurter, J., dissenting.

*Irvin v. Dowd*, 366 U.S. 717, 727, 81 S.Ct. 1639, 1645, 6 L.Ed.2d 751 (1961): "* * * Eight out of the 12 thought petitioner was guilty. With such an opinion permeating their minds, it would be difficult to say that each could exclude this preconception of guilt from his deliberations. The influence that lurks in an opinion once formed is so persistent that it unconsciously fights detachment from the mental processes of the average man."

"More than one student of society has expressed the view that not the least significant test of the quality of a civilization is its treatment of those charged with crime, particularly with offenses which arouse the passions of a community." *Id.* at 729, 81 S.Ct. at 1646, Frankfurter, J., concurring.

*Estes v. Texas*, 381 U.S. 532, 543, 85 S.Ct. 1628, 1633, 14 L.Ed.2d 543, reh. denied 382 U.S. 875, 86 S.Ct. 18, 15 L.Ed.2d 118 (1965)[1]: "'A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the *probability* of unfairness.... [T]o perform its high function in the best way "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 [75 S.Ct. 11, 13, 99 L.Ed. 11,

---

**1.** This case has similarities to the case at bar in resulting from a four-four-one vote, as compared to this case as a two-two-one resolution.

See then *Chandler v. Florida*, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981).

16].' " Quoting from *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

"The decision below affirming petitioner's conviction runs counter to the evolution of Anglo-American criminal procedure over a period of centuries. During that time the criminal trial has developed from a ritual practically devoid of rational justification to a fact-finding process, the acknowledged purpose of which is to provide a fair and reliable determination of guilt." *Id.* at 557, 85 S.Ct. at 1640, Warren, C.J., concurring.

"I have attempted to show that our common-law heritage, our Constitution, and our experience in applying that Constitution have committed us irrevocably to the position that the criminal trial has one well-defined purpose—to provide a fair and reliable determination of guilt." *Id.* at 565, 85 S.Ct. at 1644, Warren, C.J., concurring.

" * * * 'Under our Constitution's guarantee of due process,' we said, 'a person accused of committing a crime is vouchsafed basic minimal rights. Among these are the right to counsel, the right to plead not guilty, and the right to be tried in a courtroom presided over by a judge.' [*Rideau v. Louisiana*, 373 U.S. 723, 726–727, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963).]" *Id.* at 611, 85 S.Ct. at 1674, Stewart, J., dissenting.

*Peters v. Kiff*, 407 U.S. 493, 501–502, 92 S.Ct. 2163, 2168, 33 L.Ed.2d 83 (1972):

" 'A fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison*, 349 U.S. 133, 136, 99 L.Ed. 942, 946, 75 S.Ct. 623 [625] (1955). The due process right to a competent and impartial tribunal is quite separate from the right to any particular form of proceeding. Due process requires a competent and impartial tribunal in administrative hearings [citations]. Similarly, if a State chooses, quite apart from constitutional compulsion, to use a grand or petit jury, due process imposes limitations on the composition of that jury.

"Long before this Court held that the Constitution imposes the requirement of jury trial on the States, it was well established that the Due Process Clause protects a defendant from jurors who are actually incapable of rendering an impartial verdict, based on the evidence and the law. Thus a defendant cannot, consistent with due process, be subjected to trial by an insane juror, [citation] by jurors who are intimidated by the threat of mob violence, [citation] or by jurors who have formed a fixed opinion about the case from newspaper publicity [citation].

"Moreover, even if there is no showing of actual bias in the tribunal, this Court has held that *due process is denied by circumstances that create the likelihood or the appearance of bias.*" (Emphasis added.)

*Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982):

" * * * Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."

"The right to a trial by an impartial jury lies at the very heart of due process. *Irvin v. Dowd*, 366 U.S. 717, 721–722 [81 S.Ct. 1639, 1641–1642, 6 L.Ed.2d 751] (1961). '[O]ur common-law heritage, our Constitution, and our experience in applying that Constitution have committed us irrevocably to the position that the criminal trial has one well-defined purpose—to provide a fair and reliable determination of guilt.' *Estes v. Texas*, 381 U.S. 532, 565 [85 S.Ct. 1628, 1644, 14 L.Ed.2d 543] (1965) (Warren, C.J., with whom Douglas and Goldberg, JJ., joined, concurring)." *Id.* at 224–225, 102 S.Ct. at 950, Marshall, J., dissenting.

" ' * * * [A]lthough a juror may be sincere when he says that he was fair and impartial to the defendant, the psychological impact requiring such a declaration before one's fellows is often its father.' [*Irvin v. Dowd*, supra, 366 U.S. at 728, 81 S.Ct. at 1645.] * * * 'It is in the

nature of the practices here challenged that proof of actual harm, or lack of harm, is virtually impossible to adduce.' [*Peters v. Kiff*, supra, 407 U.S. at 504, 92 S.Ct. at 2169.]

"I believe that in cases like this one, where the probability of bias is very high, and where the evidence adduced at a hearing can offer little assurance that prejudice does not exist, the juror should be deemed biased as a matter of law." *Id.* at 231, 102 S.Ct. at 953, Marshall, J., dissenting.

*McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984):

" * * * One touchstone of a fair trial is an impartial trier of fact—'a jury capable and willing to decide the case solely on the evidence before it.' *Smith v. Phillips,* 455 U.S. 209, 217, 71 L.Ed.2d 78, 102 S.Ct. 940 [946] (1982). Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on voir dire may result in a juror's being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious."

" * * * In my view, the proper focus when ruling on a motion for new trial in this situation should be on the bias of the juror and the resulting prejudice to the litigant * * *, under the facts and circumstances surrounding the particular case, [whether] the juror was biased against the moving litigant. * * *

"When applying this standard, a court should recognize that '[t]he bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law.' *United States v. Wood,* 299 U.S. 123, 133, 81 L.Ed. 78, 57 S.Ct. 177 [179] (1936). * * * Because the bias of a juror will rarely be admitted by the juror himself, 'partly because the juror may

have an interest in concealing his own bias and partly because the juror may be unaware of it,' *id.* [*Smith v. Phillips,* 455 U.S.] at 221–222 [102 S.Ct. at 948, 71 L.Ed.2d 78 (1982)] * * *, it necessarily must be inferred from surrounding facts and circumstances. Therefore, for a court to determine properly whether bias exists, it must consider at least two questions: are there any facts in the case suggesting that bias should be conclusively presumed; and, if not, is it more probable than not that the juror was actually biased against the litigant." *Id.* at 557–558, 104 S.Ct. at 851, Brennan, J., concurring.

The guidance derived from the cited array is distinguishable in its application, and undistinguished and compelling in its justification.

It is time for this court to step back, look at the Wyoming and United States constitutional imperatives, and affirm the indispensable predicate of justice, a fair and impartial jury. The preclusionary "May we have another juror, please?" is neither so difficult in statement nor expensive in application to outweigh the constitutional mandate and societal desire for justice.

The jury-panel selection process used to judge Summers, so eloquently and comprehensively discussed by Justice Cardine in his dissent in Summers, supra, did not meet the test of intrinsic fairness and impartiality, and consequently the conviction should be reversed for a fair retrial. Hopefully, in the future, any progeny of this case will be excommunicated.

I would reverse and grant a new trial.