**Michael Scott HOPKINS, et al.,
Plaintiffs-Appellants,**

v.

**COUNTY OF LARAMIE, WYOMING, et
al., Defendants-Appellees.**

No. 82–2208.

United States Court of Appeals,
Tenth Circuit.

March 23, 1984.

Jon L. Holm of Holm & Christensen, Denver, Colo. (Steven A. Christensen of Holm & Christensen, Denver, Colo., and James W. Gusea of Vines, Rideout & Gusea, Cheyenne, Wyo., with him on the brief), for plaintiffs-appellants.

Blair J. Trautwein, Hathaway, Speight & Kunz, Cheyenne, Wyo., for defendants-appellees.

Before SETH, BREITENSTEIN and McKAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is an action under 42 U.S.C. § 1983 by Michael and Susan Hopkins and the estate of their mother against the County of Laramie, Wyoming, and four police officers. After a jury trial in which the jury found that the defendants were guilty of no negligence, judgment was entered on the jury verdict. Plaintiffs appeal on the grounds to be hereinafter noted. We affirm.

Raymond and Martha Hopkins were husband and wife. Police Officer Broyles on July 17, 1979, responded to a disturbance call at a Cheyenne motel. On arrival he was told that the Hopkins were having an altercation and that Mr. Hopkins had a gun and was holding Mrs. Hopkins as a hostage. As the Hopkins were leaving the motel, Broyles tried to stop them and fired at the car with a shotgun. Police officers, sheriff's deputies and the highway patrol pursued the car as it proceeded west out of Cheyenne. As it broke through a one-car road block, additional shots were fired. Finally, the Hopkins' car collided with a police car and the Hopkins' car left the road. Additional shots were fired by the officers and Mrs. Hopkins apparently was shot by her husband. The husband later apparently committed suicide. The case was brought on the theory of use of excessive force and inadequate training. The jury returned a verdict for the defendants and this appeal followed.

Plaintiffs object to the court's denial of their challenges for cause directed at three prospective jurors. Juror Francis said that she knew the family of defendant Bomar. The following colloquy occurred:

"THE COURT: ... the question is could you be completely fair and impartial in this case despite your friendship with Mr. Bomar?

JUROR FRANCIS: I think I could.

THE COURT: And you feel that you could serve as a fair and objective juror?

JUROR FRANCIS: Yes."

Juror Ward said that he knew all the sheriffs and about half of the lawyers. The following then occurred:

"THE COURT: ... As a result of that, do you feel that you'd have an opinion in this case? Do you feel that your objectivity would be impaired?

JUROR WARD: No."

The following exchange took place between the court and Juror Cole:

"JUROR COLE: I know Mr. [defendant] Brown. I'm not real close affiliated with him or anything like that, but I think that I would be one that would have an opinion made up.

THE COURT: You've known him in the course of your living in this community. Do you feel that your friendship would make you decide one way or the other in this case?

JUROR COLE: Well, yeah, but I really always have been for the side of the law enforcement part anyway.

THE COURT: ... Let me ask you, Mr. Cole, have you ever worked in law enforcement?

JUROR COLE: No, not really.

THE COURT: But you've been interested in law enforcement?

JUROR COLE: Yes."

Noting that most citizens will generally support police officers, the court explained the responsibilities of the jury, then asked if they all felt that they could put aside their sympathies for law and order and

apply the law to the facts in a fair and impartial manner. No one, including Juror Cole, responded that he would have a problem with that.

At the conclusion of the voir dire, plaintiffs' counsel challenged the three jurors, Francis, Ward, and Cole for cause. The court denied the challenges but asked plaintiffs' counsel if he had any further questions. He did not. The plaintiffs then exercised their peremptory challenges to excuse all three.

■ Generally an improper denial of a challenge for cause is error as it forces a party to use a peremptory challenge. See *Photostat Corporation v. Ball*, 10 Cir., 338 F.2d 783, 786. The determination of the trial court of a challenge for cause will not be disturbed absent an abuse of discretion. See *Mares v. United States*, 10 Cir., 383 F.2d 811, 812, cert. denied 390 U.S. 961, 88 S.Ct. 1060, 19 L.Ed.2d 1157. Here, the court gave plaintiffs' counsel a chance to convince him of the propriety of a challenge for cause by asking further questions. He did not take advantage of this opportunity. In the light of this, plaintiffs have shown no abuse of discretion. Plaintiffs have raised no argument that the jury which actually heard the case was biased.

■ On direct examination, plaintiff Michael Hopkins testified that he had not advanced with his employer, the Union Pacific Railroad, because after his mother's death, he had to move to Laramie, Wyoming, to take care of his sister. Defense counsel, on cross-examination, then asked if the railroad took a position "in terms of advancement as it relates to a bust of drugs on the job." Plaintiff answered "yes," and then said he had used marijuana in high school. When asked if he had ever used cocaine, his counsel objected on the grounds of relevancy and was overruled. He answered "yes," and, without objection, said that he had used speed. The objection was on the ground of relevance only. He had opened up the question of advancement. In the circumstances the court did not abuse its discretion in permitting the answer. In any event, the error was harm-

less, as the testimony went to damages, a question not addressed because the jury found no negligence by the officers giving rise to liability, and there was no objection to most of the testimony.

■ Plaintiffs argue that the court erred in admitting defense witness Oyler to testify as an expert even though he previously was not identified as such as required by Fed.R.Civ.P. 26(b)(4). Oyler did not testify as an expert. His testimony was generally outlined by defense counsel at the pre-trial conference. His opinions were admissible as those of a lay witness under Rule 701, Fed.R.Evid.

■ Plaintiffs contend that the court erred in its various rulings regarding their expert witness Kirkham. Defendants sought to take his deposition and refused to pay his fee of $1,000. By its order of June 30, 1982, that the defendants take the deposition on July 2, 1982, at Tallahassee, Florida, the court did not require them to pay the witness fee. This matter was referred to a magistrate who found that,

"Plaintiffs have made no showing that any expenses incurred concerning Dr. Kirkham were incurred in responding to permissible discovery by Defendants and Plaintiffs have made no valid showing as to the reasonableness of the fees incurred by Plaintiffs in obtaining facts and opinions from Dr. Kirkham." Vol. II, pp. 529–530.

F.R.Civ.P. 26(b)(4)(C) provides that if a court allows the deposition of an expert who will testify at trial, the court must order the discovering party to compensate the expert for his time, unless "manifest injustice would result." Additionally, the court has discretion to order the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert." Fed.R.Civ.P. 26(b)(4)(C) allows the court to protect a party from undue expense "[u]pon motion by a party ... and for good cause shown...." Plaintiffs have pointed to nothing in the record that

refutes the magistrate's determination that good cause had not been shown.

In any event appellees filed a motion to strike the argument based on Kirkham's witness fee on the ground that it had been paid and attached thereto a copy of a check made out to the plaintiffs' attorney and Kirkham for $2400.00. The motion is not contested. In the circumstances, we deny the motion to strike but receive the motion for what it is worth. The appellants have not contested the motion and proof of payment. The acceptance of the payment ends the matter.

■ The next argument goes to the failure of the defendants to produce the bullet that killed Mrs. Hopkins. On January 29, 1982, the parties stipulated that the defendants would give the bullet to the plaintiffs' attorneys and expert. On March 15 the defense counsel in a letter to plaintiffs' counsel said that pursuant to their later agreement, the bullet was to be sent directly to the plaintiffs' expert and that he was waiting to be told who the expert was. The plaintiffs voluntarily decided not to have a ballistics expert. No impropriety was shown.

■ Defendants moved to disqualify the Honorable Clarence A. Brimmer from hearing the case because of his receipt of a letter from defense counsel to plaintiffs' counsel. The court received a copy of the letter. The motion does not come within 28 U.S.C. § 144 because no affidavit and no certificate of counsel that it was made in good faith were filed. It does not come within 28 U.S.C. § 455 because plaintiffs allege no interest which the judge had in the case. Defendants simply sent to the court a copy of a letter written to plaintiffs' counsel regarding discovery. The motion was properly denied.