KELLY, Judge.
Charles Harold Parker appeals from the order revoking his probation and from his five-year prison sentence. He argues that the violation, changing his residence without permission, was not willful or substantial because he believed that his probation had terminated before he moved. We reverse because the record does not support the finding that Parker willfully violated the terms of his probation.
On October 7, 1992, Parker entered a plea of no contest to three counts of promoting sexual performance by a child and was sentenced to five years’ imprisonment. His prison sentence was suspended and he was placed on five years’ probation. Parker’s probation was revoked in 1994 and he was placed on one year of community control followed by three years of probation. Parker completed his community control and his supervision was changed to proba *1224 tion. In 1996, that probation was converted to administrative or mail-in probation, which required Parker to file a monthly written report. His probation was scheduled to expire on September 22, 1998. Parker continued to file monthly reports until November 5,1997.
At the revocation hearing, Robert Morrison, Parker’s probation officer, testified that he received information that Parker had moved from his residence on November 13, 1997. He did not hear from Parker again. Parker did not obtain prior consent to move from his residence, so Mr. Morrison filed a violation report alleging that Parker had changed his residence without permission, a violation of condition three of Parker’s probation.
Parker testified that he had only completed the fifth grade. In 1984, he was hit by a car and suffered a serious head injury which kept him in a hospital for a year and in a mental hospital for three years. Parker believed that his mental problems and his limited education hindered his capacity to understand things. In 1996 when his probation was converted to an administrative or mail-in probation, he explained to the secretary at the probation office that he needed enough forms to get him through his probation period. She looked up his record and gave him what he thought was the correct number of forms to mail in for the remainder of his sentence. He diligently mailed in the forms until he had no more and then assumed that he was finished with probation. He left the state for eight and a half years, only returning when he discovered that there was a warrant out for his arrest.
Illness, including mental illness, can render a technical violation of probation “not substantial or willful because a mental or physical illness can be debilitating to the point that a probationer cannot comply with the terms of probation.” Meade v. State, 799 So.2d 430, 432 (Fla. 1st DCA 2001). See Williams v. State, 728 So.2d 287, 288 (Fla. 2d DCA 1999) (holding that Williams’ failure to file reports and submit to urinalysis testing were not willful because he was “crippled” by severe depression); Copeland v. State, 864 So.2d 1197 (Fla. 1st DCA 2004) (noting that Copeland suffered from severe delusions produced by his paranoid schizophrenia and that this illness caused him to violate his probation). Parker, having a fifth-grade education and mental ailments, explained that he believed he had complied with the terms of his probation and that he was free to leave the state. He testified that he received no explanation when his probation was converted to administrative probation, other than that he had to mail in monthly reports. He no longer had to visit the probation office, so he had little contact with his probation officer. When his forms were gone, he believed that his probation had been completed.
A violation of probation sufficient to revoke the probation must be both willful and substantial. Dean v. State, 948 So.2d 1042 (Fla. 2d DCA 2007). The State has the burden of proving by the greater weight of the evidence that the probationer’s actions were willful and substantial. Id. at 1044. Here, the State presented no evidence to rebut Parker’s testimony. See Lynom v. State, 816 So.2d 1218 (Fla. 2d DCA 2002) (holding that the State failed to rebut the defendant’s testimony that he was forced to leave his approved residence and could not reach the probation officer to inform him of his move).
Parker’s probation officer testified that he knew Parker had little education and that he had suffered serious head trauma. He conceded that he did not know that Parker had been declared incompetent to proceed at one point in 1992. *1225 He admitted that even though he knew Parker’s background, he did not take special care to insure that Parker understood the terms of his probation. He also admitted that he never told Parker when his probation terminated. He stated, “I just make an assumption that the person knows when his probation is going to terminate. I don’t normally tell the person, be advised that your probation is going to terminate on this date.” This testimony was insufficient to prove that Parker willfully violated his probation by absconding.
The trial court determined that Parker was able to understand how to file monthly reports and at one point had requested early termination of his probation. The court assumed that “[tjhere would had to have been a finding that he was competent at the time that he made [the plea agreement] and he had advice of counsel as evidenced by the fact that at least as late as late '96 he was in court making motions through his attorney.” We conclude that the trial court erred in assuming that Parker was competent and that he knew when his probation terminated. The State presented no evidence on which to base those assumptions.
Accordingly, we reverse and remand for the trial court to reinstate Parker’s probation or to discharge him if the court determines he has completed his sentence.
Reversed and remanded with directions.
FULMER and CASANUEVA, JJ., Concur.