2009 WY 146

**William Henry FORBES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–08–0278.

Supreme Court of Wyoming.

Dec. 1, 2009.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric Alan Johnson, Director, Prosecution Assistance Program; Justin A. Daraie, Student Intern; Christopher J. King, Student Intern. Argument by Mr. Daraie.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] William Henry Forbes pled guilty to two counts of third-degree sexual abuse of a minor. The district court imposed concurrent sentences of six to eight years, but suspended those sentences and placed Mr. Forbes on supervised probation. Subsequently, the State moved to revoke his probation. The district court, after a hearing, revoked probation and imposed the underlying sentence. Mr. Forbes appeals, claiming that the State failed to prove he willfully violated a condition of his probation, and that the district court erred when it did not provide him the opportunity to allocute at his probation revocation hearing. We affirm.

### ISSUES

[¶ 2] Mr. Forbes presents the following issues on appeal:

1. Did the trial court err in revoking appellant's probation, as he did not initiate, establish or maintain contact with a minor?

2. Was the alleged probation violation willful?

3. Did the trial court err when it refused to allow appellant to allocute at his probation revocation hearing?

### FACTS

[¶ 3] Mr. Forbes met the victim in Anchorage, Alaska, when she was fourteen and he was thirty-five. They began a sexual relationship and the victim became pregnant with Mr. Forbes's child. They traveled to California and Louisiana and eventually landed in Wyoming when their car broke down in Cheyenne. In June of 2007, the victim gave birth to a son. The victim contacted law enforcement seeking a welfare check on the child. She disclosed her sexual relationship

with Mr. Forbes to the responding officer. The State filed criminal charges against Mr. Forbes.

[¶ 4] In April of 2008, Mr. Forbes pled guilty to two counts of third-degree sexual abuse of a minor in violation of Wyo. Stat. Ann. § 6–2–316(a)(iv) (LexisNexis 2007).[1] Following entry of that plea, the district court sentenced Mr. Forbes to six to eight years in the Wyoming State Penitentiary. The court suspended execution of that sentence in favor of six years of supervised probation. The Judgment and Sentence of the district court specifically provided: "DEFENDANT shall not initiate, maintain, or establish contact with any minor child, nor attempt to do so, nor reside in the same residence with minor children without the written permission of the probation agent in consultation with the treatment provider."

[¶ 5] During a routine home visit, Mr. Forbes's probation officer discovered a woman and her 14-year-old son in his hotel room. Mr. Forbes claimed they were homeless and he had no choice but to give them a place to stay for the night. Mr. Forbes was taken into custody and the State initiated proceedings to revoke his probation. The district court held a revocation hearing, found that Mr. Forbes's actions violated a condition of probation, and revoked his probation. The court heard arguments from counsel regarding further disposition, but did not offer Mr. Forbes the opportunity to make a statement prior to rendering a decision. After the court announced its decision to impose the underlying sentence, Mr. Forbes requested an opportunity to address the court but was not allowed to do so. This appeal followed.

### STANDARD OF REVIEW

[¶ 6] Probation revocation proceedings are reviewed under our abuse of discretion standard. *Ramsdell v. State*, 2006 WY 159, ¶ 11, 149 P.3d 459, 462 (Wyo.2006). A district court's decision to revoke probation

---

1. Wyo. Stat. Ann. § 6–2–316(a)(iv) provides:
   (a) Except under circumstance[s] constituting sexual abuse of a minor in the first or second degree ..., an actor commits the crime of sexual abuse of a minor in the third degree if:
   ....

   (iv) Being seventeen (17) years of age or older, the actor knowingly takes immodest, immoral or indecent liberties with a victim who is less than seventeen (17) years of age and the victim is at least four (4) years younger than the actor.

and impose a sentence is discretionary and will not be disturbed unless the record demonstrates a clear abuse of discretion. *Mapp v. State*, 929 P.2d 1222, 1225 (Wyo.1996). We review the district court's decision to determine whether the court could reasonably conclude as it did. *Id.* "Upon review, all that is necessary to uphold a district court's decision to revoke probation is evidence that it made a conscientious judgment, after hearing the facts, that a condition of probation had been violated." *Sweets v. State*, 2003 WY 64, ¶ 9, 69 P.3d 404, 406 (Wyo.2003).

### DISCUSSION

[¶ 7] Probation revocation hearings are governed by W.R.Cr.P. 39. In addressing proceedings under this rule we have stated:

> The proceedings for probation revocation consist of a two-part process. The first part, the adjudicatory phase, requires the district court to determine by a preponderance of the evidence whether a condition of probation was violated. The second, dispositional phase, is triggered only upon a finding that a condition of probation was violated. In this phase, the district court must deliberate not only upon the violation, but also the reasons the conditions were originally imposed and the circumstances surrounding the violation. After consideration of all these factors, the district court must then determine the appropriate consequences of the probationer's violation.

*Sinning v. State*, 2007 WY 193, ¶ 9, 172 P.3d 388, 390 (Wyo.2007), quoting *Mapp*, 929 P.2d at 1226.

[¶ 8] A probation violation ordinarily will justify revocation only if the violation was willful. *E.g.*, *Edrington v. State*, 2008 WY 70, ¶ 7, 185 P.3d 1264, 1266 (Wyo. 2008); *Sami v. State*, 2004 WY 23, ¶ 15, 85 P.3d 1014, 1020 (Wyo.2004); *Anderson v. State*, 2002 WY 46, ¶ 26, 43 P.3d 108, 118 (Wyo.2002). In the context of a probation revocation, the term "willful" is given its ordinary and common meaning. *Edrington*, ¶ 9, 185 P.3d at 1267. "Willfully means intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly,

inadvertently, accidentally, negligently, heedlessly or thoughtlessly." *Id.*, quoting *Butz v. State*, 2007 WY 152, ¶ 20, 167 P.3d 650, 655 (Wyo.2007).

[¶ 9] At the probation revocation hearing, the district court first considered the State's evidence of the violation and Mr. Forbes's contention that his actions were justified. Once it determined Mr. Forbes had violated a condition of probation, the court revoked probation and then heard arguments regarding disposition. We will first address the district court's finding that Mr. Forbes willfully violated a condition of his probation.

[¶ 10] As a condition of his probation, Mr. Forbes was ordered not to "initiate, maintain, or establish contact with any minor child." The State contended that Mr. Forbes "maintained" contact with a minor. The word "maintain" is not defined in the sentencing order identifying Mr. Forbes's probation conditions. The parties agree, however, that the common definition of "[t]o continue (something)" applies to this probation condition. Black's Law Dictionary 1039 (9th ed. 2009). This common meaning of "maintain" is evident when considered in relation to the words "establish" and "initiate." The prohibition on "maintaining" contact with a minor supplements the prohibitions of "initiating" and "establishing" by forbidding Mr. Forbes from continuing contact with a minor that may have been initiated or established by him, or someone else.

[¶ 11] While it may have been unclear how contact with the minor was initiated, the district court found that Mr. Forbes did not terminate contact as required. The State presented the testimony of Mr. Forbes's probation officer who described going to Mr. Forbes's hotel room for a routine home visit. She then testified:

> [Probation Officer]: I collected a breathal[y]zer, went into his hotel room. At that point, I noticed that his closet door was shut. That was noticeable to me because it's a small hotel room, and normally, he has that door open, previously had a chair in it, sort of treated it as a separate room because his room was so small.

So he set it up as best he could to make it an apartment. On that day the door was shut, so I asked him if he would open the door. He told me I wouldn't like it, and he was very nervous. I told him, "That's okay. I still need you to open the door." He opened the door and a lady . . . was in there with her minor son.

. . . .

[Prosecutor]: Did you ask them to leave?

[Probation Officer]: They did. They left— her and her son. They had a suitcase with them on wheels, and they pulled their suitcase behind them, and they left. I watched them walk down the hallway.

[Prosecutor]: Did you have any further conversation with Mr. Forbes?

[Probation Officer]: I continued to talk with Mr. Forbes because at that point I was doing two things: I was trying to get a supervisor on the phone to figure out what to do, and I was talking with Mr. Forbes about why he was in this situation. He told me he felt like he had to give them a place to stay. I told him he of all people know we have homeless people and different things available to people, that he needs to follow the conditions of his probation, and also that he needs to protect himself. Why would he put himself in that position if he knew he was a sex offender, and have a minor around?

[Prosecutor]: Did he express any concern about violating the terms of his probation?

[Probation Officer]: He was. He was very nervous what was going to happen from here, did this affect his probation. He was very nervous.

[Prosecutor]: Well, was he aware this was a condition of his probation that he was not to have any contact with minors?

[Probation Officer]: Yes, he was. I went over court orders with him. I [had] gone over a second-offense Probation and Parole agreement that we have. He was very aware of the contact. He opened the hotel room and knew they were hiding in his closet. He was aware from the beginning this would be a problem.

The probation officer then testified that she left the hotel room and contacted a supervisor about what to do next. Her testimony continued:

[Prosecutor]: Did you go back to his hotel room?

[Probation Officer]: I went back to his room with law enforcement. Law enforcement knocked on the door, and [the woman] was there with her son back in the hotel room.

[¶ 12] Mr. Forbes contends that the probation officer's testimony was not sufficient to prove he "maintained" contact with a minor. He also argues that, even if he did "maintain" contact, the violation was not willful. Mr. Forbes attempts to support this claim by asserting that the district court made remarks at the original sentencing which led him to believe that his conduct did not violate the terms of his probation.

[¶ 13] At the sentencing hearing, the district court explained that Mr. Forbes was to have no contact with minors as a condition of his probation. The following exchange then occurred:

[Defense Counsel]: . . . [A]s the [c]ourt mentioned, it's a discretion of the Probation and Parole supervising agent regarding contact with minors. Of course, Mr. Forbes also has relatives that may be under age at family gatherings. I'm sure that will be something he can qualify with his agent.

[The Court]: Yes. You're talking about the prohibition against contact with minors, and the details of that prohibition will be worked out between Mr. Forbes and the supervising agent. [The m]ain point, obviously, is that he have no contact that's not supervised or in the company of others with persons that are minors. If he goes to family events where there are people under 18 years of age, that's not a violation.

Mr. Forbes asserts that these comments led him to believe that allowing the woman and her child to stay in his hotel room would not be a violation because the boy was accompanied by his mother.

[¶ 14] The district court found the State's evidence plainly established a willful violation, stating: "There [was] a woman and

her minor son, [a] 14–year–old boy hiding in Mr. Forbes' room. I think reasonable inference from the fact they were hiding is that he knew very well he was—she was not to be there. It was a violation." The district court also found evidence that Mr. Forbes was not a passive player in the violation, but had actively maintained contact with the minor, stating:

> On neither occasion—the original entry into the room, [or the] return to the room—could it have occurred without Mr. Forbes' acting permission. He was [the] sole occupant of the room, [the] one who was renting it. He had control over who came in and who didn't. There's no question he knew it was a violation.

The court reflected that it was also reasonable to infer from the State's evidence that the mother and son did not randomly select Mr. Forbes's room and that he must have had some contact with them prior to the incident.

[¶ 15] The evidence also does not support Mr. Forbes's claim that the remarks of the district court led him to believe his actions were not a violation. According to the probation officer's testimony, Mr. Forbes was clearly instructed that having the child in his room was a violation. Despite that advice, the mother and child were again in the room when the probation officer returned with law enforcement. We find no error in the district court's determination that Mr. Forbes willfully violated one of the conditions of his probation.

■ [¶ 16] In this appeal, Mr. Forbes also contends that his actions were justified because they were necessary to prevent the woman and her son from spending the night on the street. It is unclear whether the defense of necessity is available to defend a violation of probation. *Compare State v. Pease,* 233 Mont. 65, 758 P.2d 764, 768 (1988) (not allowing the defense of necessity to justify defendant's probation violation) with *People v. Planer,* 161 Ill.App.3d 938, 113 Ill.Dec. 883, 515 N.E.2d 1042, 1045 (1987) (contemplating the applicability of necessity as a defense to a probation violation but not applying it to defendant's case for lack of evidence). In this case, there is insufficient evidence to establish the defense. To the extent that any evidence supported the defense, the district court carefully considered that evidence in arriving at its conclusion that the violation was willful.

[¶ 17] The district court also considered the circumstances of the incident in determining the consequences for the violation. The district court noted, "this violation is not the crime of the century, but Mr. Forbes knows very well that he got in serious trouble by having contact with minors." The court remarked on the broader danger of permitting sex offenders to invoke charitable motives for probation violations:

> [This case b]rings to mind a case we had where the child sex offender would deliberately order more pizza than he and his mother could eat. He would go across the street to the park and offer it to the kids who would come around, and he was caught doing that, and the argument was now we're sending people to prison for giving pizza to kids.

> If you take a very, very short view of the situation, it may so appear, but ... that's not what it's about.

The district court also drew a connection from the probation violation to the underlying crime, noting that the victim in the original case was a homeless runaway when Mr. Forbes sexually abused her. As these remarks demonstrate, the district court thoughtfully considered the relevant circumstances—including the claimed necessity created by the fact that the woman and her son were homeless—in finding that this was a willful violation of a probation condition and in determining the appropriate consequence for the violation.

[¶ 18] Next, we turn to Mr. Forbes's contention that the trial court committed reversible error when it did not permit him to allocute at the probation revocation hearing. After the district court determined Mr. Forbes had violated a condition of his probation, it heard arguments from both counsel regarding further disposition. The State sought imposition of the underlying sentence. Defense counsel requested continued probation. After arguments had concluded, the

district court announced its decision. It did so without asking Mr. Forbes if he wished to make a statement. The following exchange then occurred:

[Defendant]: Excuse me, may I say something?

[The Court]: Yes. Oh, I'm sorry ... no, I don't need to hear from you, Mr. Forbes. Your attorney spoke very eloquently on your behalf.

[Defendant]: So I just got six to eight years for performing Christian duties.

Mr. Forbes asserts that the district court erred when it failed to provide him the opportunity to allocate.

[¶ 19] This Court has not yet faced the question of whether a probationer has the right to allocate at a probation revocation proceeding. Wyoming has long recognized the right of a defendant to speak in mitigation at sentencing. *Keffer v. State*, 12 Wyo. 49, 73 P. 556, 560 (1903); *White v. State*, 23 Wyo. 130, 147 P. 171, 174 (1915); *see also Christy v. State*, 731 P.2d 1204, 1207 (Wyo. 1987); *Wilson v. State*, 2007 WY 55, ¶ 14, 155 P.3d 1009, 1012 (Wyo.2007). The right has been codified by procedural rule. W.R.Cr.P. 32(c)(1)(C) requires the district court to "[a]ddress the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence," before the court imposes a sentence. The issue at hand, however, requires us to decide the specific question of whether a defendant must be afforded the right to allocate at a probation revocation proceeding.

[¶ 20] W.R.Cr.P. 39 governs probation revocation proceedings. It states, in pertinent part:

(5) Hearing.—At the hearing upon the petition for revocation of probation, the state must establish the violation of the conditions of probation alleged in the petition by a preponderance of the evidence.

(A) The probationer shall have the right to appear in person and by counsel, and

to confront and examine adverse witnesses.

W.R.Cr.P. 39(a)(5)(A). The rule is silent regarding a defendant's right to allocate. Mr. Forbes contends that the allocution provision of W.R.Cr.P. 32(c)(1)(C) should apply in probation revocation proceedings. He cites to this Court's decision in *Anderson*, 43 P.3d 108 to support this claim.

[¶ 21] In *Anderson*, the defendant pled guilty to aggravated assault and battery. The court accepted, but did not enter, the plea and placed the defendant on probation in accordance with Wyoming's "first-offender" statute.[2] The State later filed a petition to revoke the defendant's probation. Finding a violation, the district court entered the plea, revoked the defendant's probation, and imposed a sentence of 12–18 months at the Wyoming Women's Center. Although the issue of allocution was not presented, we felt compelled to comment:

Our review of the record reveals that, although Anderson was given an opportunity to allocate at the time she was placed on probation, she was not afforded such an opportunity at the time she was sentenced to a term of 12–18 months in the Wyoming Women's Center. No issue is raised in this regard, but we call this to the attention of the district courts in an effort to ensure that the requirement for allocution is met. W.R.Cr.P. 32(c)(1)(C); *Christy v. State*, 731 P.2d 1204, 1207 (Wyo.1987); and *see* Michael A. DiSabatino, J.D., Annotation, *Right and Sufficiency of Allocution in Probation Revocation Proceeding*, 70 A.L.R. 5th 533 (1999).

It may be that allocution is not an absolute requirement at the time probation is granted, as technically a sentence is not imposed. However, better practice is probably to allow the defendant an opportunity to allocate at that time, as well as at sentencing in such circumstances as those which arise under Wyo. Stat. Ann. § 7–13–

---

**2.** The "first-offender" statute allows the district court to defer further proceedings and, without entering a judgment of guilt or conviction, place

certain offenders on probation for a term not exceeding five years. Wyo. Stat. Ann. § 7–13–301.

301. *See McCarty v. State,* 883 P.2d 367, 371–72 (Wyo.1994).

*Anderson,* ¶ 20 n. 10, 43 P.3d at 116 n. 10.

[¶ 22] Mr. Forbes asserts that this passage from *Anderson* supports his claim that the district court erred when it did not allow him the opportunity to address the court at his probation revocation proceeding. *Anderson,* however, is distinguishable. The defendant in *Anderson* was not sentenced until her probation was revoked. At the probation revocation proceeding, the district court, after determining that probation should be revoked, sentenced the defendant without providing the opportunity to allocute. The right of a defendant to allocute in mitigation at sentencing is governed by W.R.Cr.P. 32(c)(1)(C). Mr. Forbes's situation is different. He pled guilty and was sentenced on August 8, 2008, at a sentencing hearing governed by W.R.Cr.P. 32. Prior to imposing that sentence he was provided the opportunity to allocute. The proceeding Mr. Forbes now challenges was a probation revocation proceeding governed by W.R.Cr.P. 39.

[¶ 23] We must decide whether the allocution provision of W.R.Cr.P. 32(c)(1)(C) applies to probation revocation proceedings. The Eleventh Circuit Court of Appeals addressed this issue in *United States v. Frazier,* 283 F.3d 1242 (11th Cir.2002). In *Frazier,* the defendant claimed the district court erred when, after conducting a hearing, it sentenced him for violating the terms of his supervised release without providing an opportunity to allocute before imposing the sentence.[3] *Id.* at 1243. In considering this claim, the *Frazier* court grappled with the relationship between Fed.R.Cr.P. 32, which governed sentencing proceedings and provided the right of allocution at sentencing, and the then-current version of Fed.R.Cr.P. 32.1, which governed probation and supervised release revocation hearings, but did not specifically provide the right to allocute during such proceedings. The court noted a split of authority on the issue. Several courts held that the right of allocution provided in Fed.

R.Cr.P. 32 extended to revocation proceedings. *See United States v. Patterson,* 128 F.3d 1259, 1261 (8th Cir.1997); *United States v. Rodriguez,* 23 F.3d 919, 921 (5th Cir.1994); *United States v. Carper,* 24 F.3d 1157, 1162 (9th Cir.1994). The Sixth Circuit Court of Appeals, however, determined that a defendant did not have a right to allocute at a revocation proceeding. *United States v. Waters,* 158 F.3d 933 (6th Cir.1998).

[¶ 24] Ultimately, the *Frazier* court determined that the right did not extend to revocation proceedings. The court noted that Fed.R.Cr.P. 32 provided a party with the right to allocute *"before* the court imposes a sentence," and made no mention of revocation proceedings. *Frazier,* 283 F.3d at 1244 (emphasis added); *Waters,* 158 F.3d at 942–43. The defendant in *Frazier* had already received a sentence but had violated a term of his supervised release. The proceeding at issue was a revocation proceeding, governed by Fed.R.Cr.P. 32.1. That rule was "silent with respect to whether a defendant has a right to allocute before sentence is imposed at a revocation hearing." *Frazier,* 283 F.3d at 1245, quoting *Waters,* 158 F.3d at 943. Because the revocation proceeding in *Frazier* was governed by Fed.R.Cr.P. 32.1, and that rule was silent with respect to the right to allocute, the court held "there exists no legal requirement to grant a defendant the right to allocution at a revocation hearing." *Frazier,* 283 F.3d at 1245.

[¶ 25] The *Frazier* court did suggest that an amendment to the Federal Rules be considered:

> It does appear to us ... that this question is one that should be addressed by the Advisory Committee on the Federal Rules of Criminal Procedure. The right of allocution seems both important and firmly embedded in our jurisprudence. We suspect that its omission from [the rule governing revocation proceedings] could be the result of a simple oversight.

*Id.* In response to *Frazier* and the disparate treatment of the issue in federal circuit

---

**3.** Although there may be minor differences between probation and parole, where sentencing has been imposed previously, there is little discernable difference between parole revocations and probation revocations. *Gagnon v. Scarpelli,* 411 U.S. 778, 782 n. 3, 93 S.Ct. 1756, 1759 n. 3, 36 L.Ed.2d 656 (1973).

**518**

courts, the Advisory Committee amended the Federal Rules in 2005. Fed.R.Cr.P. 32.1(b)(2) now reads as follows:

(2) Revocation Hearing. Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:

(A) written notice of the alleged violation;

(B) disclosure of the evidence against the person;

(C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;

(D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and

(E) an opportunity to make a statement and present any information in mitigation.

The Advisory Committee also amended Fed. R.Cr.P. 32.1(c)(1), to read as follows:

(c) Modification.

(1) In General. Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation.

[¶ 26] We agree with the approach of the *Frazier* court. W.R.Cr.P. 32(c)(1)(C) applies to sentencing, not to probation revocation proceedings. Revocation proceedings are governed by W.R.Cr.P. 39. That rule is silent regarding the court's obligation to provide a defendant with the opportunity to allocute. We would urge the Advisory Committee for the Wyoming Rules of Criminal

Procedure to address this issue. As we did in *Anderson*, we again comment that allowing the probationer the opportunity to allocute is the better practice. In light of W.R.Cr.P. 39's silence on the issue, however, we do not find that the district court erred in failing to offer allocution to Mr. Forbes.

[¶ 27] Affirmed.