2011 VT 6

**STATE of Vermont v. Jesse MILES**

[15 A.3d 596]

Nos. 09-435 & 10-005

¶ 1. January 20, 2011. Defendant appeals the trial court's order revoking his probation and imposing the underlying sentence. On review, we conclude that the State failed to prove necessary elements of the charged violation of probation (VOP). Accordingly, we reverse.

¶ 2. In June 2006, pursuant to a plea agreement, defendant pled to charges of aggravated domestic assault, retail theft, and petit larceny. Based on the plea bargain, he was convicted and sentenced to a term of three to nine years, all suspended with probation, except 135 days to serve. Probation included a condition "M" prohibiting defendant from engaging in "violent or threatening behavior."

¶ 3. The docket entries reveal the following procedural history. In November 2006, a VOP complaint was filed against defendant. Defendant entered a denial and was held without bail.[*] The court ordered an inpatient psychiatric examination and appointed a guardian ad litem pending a competency hearing. Another VOP complaint, the topic of this appeal, was filed on June 25, 2007, alleging that defendant verbally threatened to kill one Bill Brown. Meanwhile, the competency hearing was delayed until early 2009 due to the filing of various motions and the appointment of a new guardian and examining psychiatrist. The competency hearing took place in April 2009, after which the court deemed defendant incompetent to stand trial and entered an Order of Hospitalization committing him to the custody of the Commissioner of the Department of Mental Health for a period not to exceed ninety days. On July 16, 2009, the commissioner filed a motion seeking a hearing to consider whether defendant should be released from the Vermont State Hospital. One week later, the court ordered a second competency

---

[*] Although this VOP prompted the initial competency evaluation, it was later dismissed and is not a subject of this appeal.

evaluation. The original Order of Hospitalization expired, but defendant remained at the Vermont State Hospital for the second competency evaluation until August 25, 2009. On that date, the court again ordered defendant held without bail. On September 1, 2009, the evaluating psychiatrist determined that defendant was competent to stand trial.

¶ 4. The VOP hearing was held in September 2009. The trial court determined the State established by a preponderance of evidence that defendant had violated probation condition M's prohibition against threatening behavior by declaring to a mental health nurse his intention to kill someone named Bill Brown. At the sentencing hearing the court imposed the underlying sentence with credit for time served. About one month later, the court denied defendant's motion to modify the mittimus, in which he sought credit for all time spent during related stays at the Vermont State Hospital.

¶ 5. On appeal, defendant argues that the trial court committed reversible error by: (1) not dismissing his guardian after he was deemed competent to stand trial; (2) treating a verbal threat alone, without accompanying conduct, as "violent or threatening behavior" in violation of condition M; (3) not requiring the State to prove that Bill Brown actually existed so as to present an actual, rather than putative, target of a genuine threat necessary for a real VOP; (4) treating delusional comments like those made by defendant as a "willful" violation of condition M; and (5) denying defendant credit for his court-ordered hospitalization time. We conclude that the State failed to prove an actual threat for purposes of a VOP; therefore, we do not address claims concerning the court's failure to dismiss the guardian and its refusal to grant defendant credit against his underlying sentence for involuntary hospital time.

¶ 6. "In a probation revocation hearing, the State bears the burden of proving the probation violation by a preponderance of the evidence." *State v. Austin*, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996). If the State meets its initial burden, the burden of persuasion shifts to the probationer to prove that the failure to comply with the probation condition was "not willful but rather resulted from factors beyond his control and through no fault of his own." *Id.* (quotation omitted). The trial court's conclusion that a probationer violated probation presents a mixed question of law and fact — "the trial court must first make a factual determination of the probationer's actions, and then make an implicit legal conclusion that the probationer's actions violated his probationary terms." *State v. Woolbert*, 2007 VT 26, ¶ 8, 181 Vt. 619, 926 A.2d 626 (mem.) (quotation omitted). The trial court's factual findings must stand if supported by credible evidence, and its legal conclusions must also stand if supported by the findings. *Id.*

¶ 7. Here, the State proceeded to hearing only on the second VOP complaint filed in June 2007. The salient facts found by the court are essentially undisputed. On June 19, 2007, while being held in the mental health unit of a state correctional facility, defendant was treated for a bleeding finger by a nurse and a volunteer assistant. The volunteer reported to the living-unit supervisor that defendant said he wanted to kill someone named Bill from Evergreen. The supervisor then spoke to defendant, who told her that he wanted to kill Bill Brown from Evergreen Counseling and that he had a plan to do it, but did not say what the plan was. When asked why he wanted to kill Bill, defendant stated that Bill had inappropriately touched him over a year earlier and he could not get Bill out of his head. He said that Bill was getting into his head through thoughts and the television. Advised that killing was not a good idea, defendant responded that the earth goddess had visited recently and told him it

was okay to kill Bill. Prior to this June 2007 discussion, defendant had made other bizarre statements in detention concerning devil worship, blood, and vampires.

¶ 8. "The question of whether verbal threats constitute threatening behavior in the context of probation conditions has yet to be decided by this Court," *State v. Gilbert*, 2009 VT 7, ¶ 7, 185 Vt. 602, 969 A.2d 125 (mem.), and will not be answered today. Even if a verbal threat were sufficient to find a VOP, considering the entire context of defendant's statements as presented on appeal, neither the evidence nor the trial court's findings support its determination that defendant engaged in culpable behavior actionable as a violation of condition M. The record more than suggests that defendant was delusional when making the purported threats. Moreover, the record is devoid of evidence about whether the putative target of the threat, Bill, existed, or whether the threat was otherwise real. Although defendant did not interpose an insanity defense, without a stated reason from the court to disregard, discount, or distinguish defendant's stated delusions — a preoccupation with Bill inserted by his television and the imprimatur from the earth goddess of his plan to kill Bill — it cannot be preponderantly evident that he was culpable in the sense that his declared intent to harm another was deliberate rather than a product of mental illness. Without a finding that his statement represented an actual intent to put another in fear of harm or to convey a message of actual intent to harm a third party, the statement cannot reasonably be treated as a threat. See *Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 622-24 (8th Cir. 2002) (en banc) (in determining whether statements are true threats of physical violence unprotected by First Amendment, courts must examine speech in light of entire factual context and consider several factors, including whether objectively reasonable person would view message as serious expression of intent to harm). Here, we remain in the dark as to whether Bill Brown was real, whether defendant was responsible for his statement, whether his threat was genuine or, if not genuine, whether he nevertheless meant the health care workers to take his statement seriously. Under these circumstances, and without further explanation of its reasoning, the trial court erred in finding a violation of condition M.

¶ 9. Contending it was defendant's burden to demonstrate that his statement was not willful, the State argues that he failed to present any testimony, expert or otherwise, indicating that his mental condition prevented him from making a willful threat. Our decision, however, stands on the record of the State's case-in-chief that, absent a rationale offered to the contrary, fails to establish the necessary elements of willfulness or threat-in-fact by a preponderance of evidence. As presented in the State's case, the circumstances surrounding the alleged threat were sufficiently bizarre to raise questions of both defendant's sanity and the genuineness of the threat without an expert weighing in on the issue. To be sure, the trial court found that defendant made a clear and unequivocal statement that he was going to kill Bill and had a plan for doing so. But, given defendant's contemporaneous delusions as recounted by the State's witness, as well as the residual ambiguity of Bill's existence and the intention and perception of defendant's statement as an actual threat, the court needed to make findings if it was persuaded that his statement was legally willful and posed a genuine threat. See *Parker v. State*, 980 So. 2d 1223, 1224 (Fla. Dist. Ct. App. 2008) (noting that mental illness can render technical violation of probation condition not substantial or willful because illness can be so debilitating that probationer cannot comply with

condition); cf. *United States v. Greer*, 158 F.3d 228, 239 (5th Cir. 1998) (stating that "[e]specially where a defendant has a history of bizarre behavior and questionable competency, the district court must closely scrutinize the record to ensure" willfulness of behavior upon which court would enhance sentence based on feigned incompetence).

¶ 10. To be clear, we do not hold that a delusional statement cannot constitute an actual threat or that some delusions necessarily render a declarant incapable of violating a probation condition such as condition M. Someone in an unstable mental frame could certainly pose and verbalize a genuine threat. At the same time, a delusional probationer could be capable of conforming to probation conditions. But, in this case, without some resolution of the surrounding indicators of delusional thinking, and without a finding of threat in fact, we cannot agree that defendant communicated a deliberate intent to harm another sufficient to constitute threatening behavior in violation of condition M.

*Reversed.*