# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 99

### APRIL TERM, A.D. 2013

### August 15, 2013

ERIC LEVANTER DEMILLARD,

Appellant
(Defendant),

v.

No. S-12-0235

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Carbon County*
*The Honorable Norman E. Young, Judge*

*Representing Appellant:*

> Diane M. Lozano, State Public Defender; Tina N. Olson, Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

*Representing Appellee:*

> Gregory A. Phillips, Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Jessica Y. Frint, Assistant Attorney General. Argument by Ms. Frint.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Justice.**

[¶1]    Appellant, Eric DeMillard, challenges an order from the district court revoking his probation.  He contends the district court abused its discretion in revoking his probation because the conduct violating the terms of his probation was not "willful."   He also claims the district court exceeded  statutory authority by ordering  involuntary administration of medication in order to restore his competency during the probation revocation proceedings.  We affirm.

## ISSUES

1.  Did the district court abuse its discretion when it revoked Appellant's probation?

2.  Did the district court err in granting the State's Motion for Involuntary Medication to restore   Appellant   to competency?

## FACTS

[¶2]    In 1999, Appellant was charged with four counts of kidnapping, four counts of interference with custody, one count of interference with a peace officer, one count of possession of a weapon with unlawful intent, and one count of aggravated burglary for "keeping his children in his estranged wife's home in Rawlins, Wyoming for several days without her permission, while holding law enforcement at bay." *DeMillard v. State*, 2008 WY 93, ¶ 4, 190 P.3d 128, 129 (Wyo. 2008) (*DeMillard I*).  Appellant pled guilty to burglary and attempted assault on a peace officer and *nolo contendere* to four counts of interference with custody, and the State agreed to dismiss the remaining charges. *Id.*, ¶ 5, 190 P.3d at 129.  The district court accepted the agreement after finding that Appellant was competent to enter a plea and  that Appellant made the plea knowingly  and voluntarily.   The court  sentenced Appellant to prison  on each  of  the  counts, but suspended the sentences in favor of twelve years of supervised probation.   In acknowledgment of Appellant's history of mental health problems, the court conditioned Appellant's probation  on  his  compliance  "with  any  medical  or  mental  health requirements placed upon him either by the Department of Corrections or as a result of recommendations made by the Wyoming State Hospital or other psychiatric facility." The court also ordered Appellant to have no contact with his ex-wife or her six children.

[¶3]    In the following years, the State sought to revoke Appellant's probation on several occasions.  In June, 2002, the State filed a petition to revoke Appellant's probation for failing to comply with recommended  outpatient  mental health treatment.  Appellant responded to the petition by filing a motion for a mental health evaluation to determine (1) his fitness to proceed, and (2) his mental status at the time of the alleged probation

1

violation. The report generated as a result of the mental health evaluation noted that Appellant had previously been diagnosed with several mental illnesses, including Major Depressive Disorder, Obsessive-Compulsive Disorder, Post-Traumatic Stress Disorder, and Mixed Personality Disorder, and also noted that his psychiatrist was presently considering a diagnosis of schizophrenia. Ultimately, the report concluded that Appellant was "severely mentally ill" at the time of the alleged probation violation and that, due to his mental illness, he lacked the capacity to comply with the conditions of his probation. The report stated that Appellant's "treatment needs exceed that which could reasonably be provided for him on an outpatient basis," and suggested that "a trial of inpatient treatment would be in order." Based on the mental health evaluation, the State stipulated to the dismissal of its petition to revoke Appellant's probation.

[¶4]   In April, 2005, the State again sought to revoke Appellant's probation due to his failure to comply with recommended mental health treatment. At the hearing on the State's petition, Appellant again requested a mental health evaluation to determine his competency to proceed, and the court suspended the proceedings pending the results of the evaluation. The report generated from that evaluation concluded that "Mr. DeMillard does have the basic capacity to comprehend his position, understand the nature and object of the proceedings against him, conduct his defense in a rational manner, and the ability to cooperate with his counsel to the end that a defense may be interposed on his behalf." Subsequent to the issuance of this report, the State filed another petition to revoke Appellant's probation, which added the allegation that Appellant had violated the conditions of his probation by contacting his children. However, for reasons that are unclear from the record, after holding an initial hearing on the State's petitions, the court issued an order dismissing the petitions and reinstating Appellant's probation.

[¶5]   Appellant subsequently filed a motion to modify his probation conditions to allow him to have telephone contact with his children, and a motion requesting that the district court discharge him from probation altogether. After holding a hearing, the district court denied Appellant's motions, noting that it had not received any indication "by letter or otherwise here today that these children and this ex-wife want to have some contact with Mr. DeMillard." We affirmed the district court's rulings in *DeMillard I*, ¶¶ 16-17, 190 P.3d at 131.

[¶6]   The present case was initiated on April 6, 2011, when the State filed its fourth petition to revoke Appellant's probation. The State alleged that Appellant violated probation by contacting his children via email and Facebook, and it supported those allegations by attaching copies of a Facebook message and emails sent by Appellant. The district court issued a warrant for Appellant's arrest and extradition proceedings were commenced in order to transport Appellant from Arizona, where he was residing at the time, to the Carbon County jail. Following Appellant's arrest, the district court appointed counsel for Appellant and set a probation revocation hearing for July 19, 2011.

2

[¶7]   As in the prior probation revocation proceedings, Appellant's counsel filed a motion for a mental health evaluation to determine Appellant's fitness to proceed.  The district court granted the motion, and an evaluation was conducted by a forensic evaluator at the Wyoming State Hospital.   In the October 28, 2011 evaluation, the evaluator concluded that, at that time, Appellant was not competent to proceed "due to major mental illness."   However, the evaluator noted that Appellant was refusing to take prescribed medication and requested a 90-day extension for an attempt at restoration of Appellant's competence via medication management.  As a result of the evaluation, the district court ordered that all further proceedings be suspended pending determination of Appellant's capacity to proceed.

[¶8]   On December 8, Appellant's forensic evaluator notified the district court that Appellant was refusing to take his antipsychotic medication, and that his mental condition had deteriorated as a result.  The evaluator stated:

> Consequently, his mental illness is significantly interfering with his ability to proceed in his legal case and this evaluator requests the Court consider ordering involuntary medication in an attempt at restoration of his adjudicative capacities, pursuant to W.S. 7-11-303(c)(vi)(e) et seq.  There is a strong probability that Mr. DeMillard will respond favorably to medication, according to 2005 hospital records.

The State subsequently filed a motion seeking to medicate Appellant involuntarily under Wyo. Stat. Ann. § 7-11-303(e) in order to restore his competency to participate in the probation revocation proceedings.  A hearing was held and the district court granted the motion.  The court concluded that, based on the testimony presented at the hearing, "there is a substantial probability that Mr. DeMillard will become competent in the near future," and that "[t]he involuntary [administration] of antipsychotic medications will significantly further the governmental interests" in bringing Mr. DeMillard to a probation revocation hearing.  On July 9, 2012, after Appellant had been medicated pursuant to the court's order, the court entered an order finding Appellant competent to proceed.

[¶9]   At the probation revocation hearing, the district court received evidence indicating that Appellant had repeatedly sent written correspondence to two of his sons in violation of the terms of his probation.  One of his sons testified that he had received "between 20 and 50" letters from Appellant, and that, eventually, "we just kind of started throwing them away because we did not really care what was written on them at this point."  He also stated that he received six or seven Facebook messages from Appellant before he "blocked" Appellant's ability to send messages to him.  The son testified that, after he blocked Appellant's communications, Appellant proceeded to send messages to the son's friend and to his girlfriend.  Another of Appellant's sons also testified that he received numerous letters and Facebook messages from Appellant during the period of his

3

probation. He stated that the letters were sent to him directly, as well as through the University of Wyoming, until he informed the University to stop forwarding the letters because he did not want to hear from Appellant. Appellant also took the stand at the hearing and admitted to sending three cards or letters per month to his children since 2006. Although Appellant asserted that his probation officer had given him permission to send those cards and letters, he provided no other evidence in support of that assertion.

[¶10] At the conclusion of the hearing, the district court found that Appellant had violated the terms of his probation by contacting his children and, accordingly, the court revoked Appellant's probation. The court reinstated Appellant's original sentence, with credit for pre-sentence confinement. Appellant timely filed this appeal.

## *STANDARD OF REVIEW*

[¶11] We review a district court's decision to revoke probation for an abuse of discretion:

> A district court's decision to revoke probation and impose a sentence is discretionary and will not be disturbed unless the record demonstrates a clear abuse of discretion. *Mapp v. State*, 929 P.2d 1222, 1225 (Wyo. 1996). We review the district court's decision to determine whether the court could reasonably conclude as it did. *Id.* "Upon review, all that is necessary to uphold a district court's decision to revoke probation is evidence that it made a conscientious judgment, after hearing the facts, that a condition of probation had been violated." *Sweets v. State*, 2003 WY 64, ¶ 9, 69 P.3d 404, 406 (Wyo. 2003).

*Forbes v. State*, 2009 WY 146, ¶ 6, 220 P.3d 510, 512-13 (Wyo. 2009). The question of whether the district court properly authorized Appellant's involuntary medication presents an issue of statutory interpretation, which we review *de novo*. *Spreeman v. State,* 2012 WY 88, ¶ 6, 278 P.3d 1159, 1161 (Wyo. 2012).

## *DISCUSSION*

[¶12] Revocation of probation is largely governed by court rule. W.R.Cr.P. 39. The State is required to establish the violation of the conditions of probation alleged in the petition by a preponderance of the evidence. W.R.Cr.P. 39(a)(5). *Edrington v. State*, 2008 WY 70, ¶ 7, 185 P.3d 1264, 1266 (Wyo. 2008). In order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must be willful, or if not willful, must presently threaten the safety of society. *Id.*

4

> The proceedings for probation revocation consist of a two-part process. The first part, the adjudicatory phase, requires the district court to determine by a preponderance of the evidence whether a condition of probation was violated. W.R.Cr.P. 39(a)(5). The second, dispositional phase, is triggered only upon a finding that a condition of probation was violated. In this phase, the district court must deliberate not only upon the violation, but also the reasons the conditions were originally imposed and the circumstances surrounding the violation.

*Id.*, ¶ 7, 185 P.3d at 1266-67 (quoting *Mapp*, 929 P.2d at 1226). "Willfulness is determined at the dispositional phase of the proceedings." *Edrington*, ¶ 7, 185 P.3d at 1267 (quoting *Sinning v. State,* 2007 WY 193, ¶ 10, 172 P.3d 388, 390 (Wyo. 2007)).

[¶13] Appellant concedes that he contacted his children on numerous occasions, and that those contacts violated the conditions of his probation. He contends, however, that the district court abused its discretion in ordering revocation of his probation because the violations were not "willful." Appellant claims that the district court, in revoking his probation, completely ignored his mental illness.

[¶14] We have said that the term "willful" is to be accorded its ordinary and common meaning unless a statute indicates that some specialized meaning is intended. *Edrington*, ¶ 9, 185 P.3d at 1267. "Willfully means intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly." *Id.* Whether a defendant's probation violation was willful is a question of fact, and we will not disturb the trial court's determination that the defendant acted willfully unless that determination was clearly erroneous. *Id.*

[¶15] In determining whether the district court abused its discretion in revoking Appellant's probation, we must note initially that Appellant did not contend, before the district court, that his conduct in violation of his probation was not willful. While Appellant clearly contended that he was not competent to participate in the probation revocation proceedings due to his mental illness, he made no claim that he was incompetent at the time of the alleged acts. Rather, Appellant chose to challenge the revocation of his probation on the grounds that, because he had been confined for well over a year during the pending probation revocation proceedings, "the punishment should have been met by now."

[¶16] The State contends that, at the probation revocation hearing, Appellant had the burden of proving that his conduct was not willful. We have never had occasion to determine which party has the burden of proving the willfulness of the defendant's

conduct in a probation revocation proceeding that does not involve the payment of money.[1]  However, we need not address the issue in this appeal because we find ample evidence in the record to support the conclusion that Appellant's conduct was, in fact, willful.  At the probation revocation hearing, the State presented uncontroverted evidence that Appellant violated the no-contact condition of his probation.  The State presented the testimony of two of Appellant's sons, who stated that Appellant had sent them Facebook messages, letters, and emails against their wishes.  At the hearing, Appellant admitted that he had sent three letters or cards per month since 2006, but claimed that he had "permission" from his probation officer to send those letters.  However, Appellant's statement that he violated the conditions of his probation only upon receiving permission from his probation officer belies the claim, raised on appeal, that the violations were the product of his mental illness.  Further, Appellant's numerous attempts to modify the no-contact provision of his probation terms strongly suggests that he was aware that contact with his children was prohibited, and that he knowingly and consciously acted in violation of that provision.  As noted by the district court:

> [I]f anyone had the time and the inclination, you could go back through this file and see numerous, numerous instances when Mr. DeMillard has either wanted to have contact or has had contact[,] and he has consistently wanted to have contact with his children throughout this long period of time.  And that culminated with him actually filing a petition seeking to modify that term of probation to allow him to have contact. . . .
>
> And as happened here today, again, at that time, his children made it very clear that they wanted no contact with their father. . . .

---

[1] In *Ramsdell v. State*, 2006 WY 159, 149 P.3d 459 (Wyo. 2006), the defendant's probation was revoked for failure to pay restitution in accordance with his probation terms.  We stated that "Once the State demonstrated a failure to pay, the burden shifted to Mr. Ramsdell to establish that he had an inability to pay restitution." *Id.*, ¶ 21, 149 P.3d at 464 (citing *Dickson v. State*, 903 P.2d 1019, 1023 (Wyo. 1995) ("In Wyoming, once the State has established the failure of a probationer to pay restitution as ordered by the court, the probationer must establish any defense to revocation based on his alleged inability to pay.")).  We note that at least one court has determined that this burden-shifting scheme in probation revocation proceedings is not context-dependent. *State v. Miles*, 2011 VT 6, ¶ 6, 189 Vt. 564, 565, 15 A.3d 596, 598 (Vt. 2011) ("In a probation revocation hearing, the State bears the burden of proving the probation violation by a preponderance of the evidence.  If the State meets its initial burden, the burden of persuasion shifts to the probationer to prove that the failure to comply with the probation condition was 'not willful but rather resulted from factors beyond his control and through no fault of his own.'") (internal citation omitted).

> These young men were the victims in this case. And there's no way you could force them to have contact, and they have made it very plain today that they did not want to have contact. And yet, [it has] continued and continued and continued.

Indeed, in the years following the entry of his sentence, Appellant filed over a dozen motions seeking permission to make contact with his children, all of which were denied. In light of the evidence produced at the hearing in this matter, as well as Appellant's failure to argue that his conduct in violation of the conditions of his probation was not willful, we are unable to conclude that the district court abused its discretion in revoking Appellant's probation.

[¶17] In his second issue, Appellant contends the district court erred as a matter of law in ordering the involuntary administration of medication for the probation revocation hearing under Wyo. Stat. Ann. § 7-11-303(e) (LexisNexis 2009). That statute provides, in pertinent part, as follows:

> (e) . . . The court may order the involuntary administration of antipsychotic medications to a person accused of a serious crime as defined in W.S. 7-6-102(a)(v) to render the accused competent to stand trial, provided the court finds:
>
> > (i) There are important governmental interests at stake including, but not limited to:
> >
> > > (A) Bringing the accused to trial;
> > >
> > > (B) Timely prosecution;
> > >
> > > (C) Assuring the accused has a fair trial.
> >
> > (ii) The involuntary administration of antipsychotic medications will significantly further the governmental interest and the administration of the medication is:
> >
> > > (A) Substantially likely to render the accused competent to stand trial; and
> > >
> > > (B) Substantially unlikely to have side effects that will interfere significantly with the ability of the accused to assist counsel in conducting a trial defense, thereby rendering the trial unfair.

7

(iii) That any alternative and less intrusive treatments are unlikely to achieve substantially the same results; and

(iv) The administration pursuant to a prescription by a licensed psychiatrist of the antipsychotic medications is medically appropriate and is in the best medical interests of the accused in light of the accused's medical condition.[2]

Appellant claims that the provisions of Wyo. Stat. Ann. § 7-11-303(e) apply only to permit a defendant to "stand trial." He contends that the term "trial" does not include probation revocation proceedings. To support his interpretation, Appellant asserts that "there is no jury available in a probation revocation, and therefore it is not a trial" for purposes of Wyo. Stat. Ann. § 7-11-303(e). We do not agree.

[¶18] In determining whether Wyo. Stat. Ann. § 7-11-303(e) grants a court authority to order the involuntary administration of medication for probation revocation proceedings, we apply our familiar rules of statutory interpretation.

Our paramount consideration is the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute. Initially, we determine whether the statute is clear or ambiguous.

A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. If we determine that a statute is clear and unambiguous, we give effect to the plain language

---

[2] The language of Wyo. Stat. Ann. § 7-11-303(e) follows the United States Supreme Court's decision in *Sell v. United States*, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). In that case, the Court held that "the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Id.*, 539 U.S. at 179, 123 S.Ct. at 2184-85.

of the statute.

*Spreeman*, ¶ 10, 278 P.3d at 1162.

[¶19]  We conclude that the phrase "stand trial" in Wyo. Stat. Ann. § 7-11-303 clearly and unambiguously encompasses probation revocation proceedings.  Our precedent establishes that sentencing is a "phase of trial" and that probation revocation proceedings are an extension of the sentencing phase:

> A probation revocation hearing is not a trial on a new criminal charge. ***It is simply an extension of the sentencing procedure resulting from conviction of the basic charge***, coupled with the requirement that the probationer be afforded due process of law before being deprived of the conditional right to liberty granted by probation.

*Gailey v. State*, 882 P.2d 888, 893 (Wyo. 1994) (emphasis added); *see also Mapp*, 929 P.2d at 1226; *Eaton v. State*, 2008 WY 97, ¶ 13, 192 P.3d 36, 52 (Wyo. 2008) ("The discussion of this issue ranges far and wide in the briefs, but at this juncture we intend only to address the initial premise, i.e., that Eaton was not competent to stand trial. Our discussion of this issue pertains to both the guilt/innocence phase and the sentencing phase of the trial."); *Olsen v. State*, 2003 WY 46, ¶ 195, 67 P.3d 536, 604 (Wyo. 2003) ("Before trial, the trial court denied motions to allow a second jury to be impaneled for the sentencing phase of the trial or, in the alternative, to conduct voir dire before beginning the sentencing phase.").  Accordingly, we conclude that the plain language of Wyo. Stat. Ann. § 7-11-303(e) grants a court the authority to order involuntary administration of medication in order to restore a defendant to competency for probation revocation proceedings.

[¶20]  Further, we agree with the district court's conclusion that to interpret the statute as Appellant suggests would "override common sense and evident statutory purpose." *Olsen*, ¶ 104, 67 P.3d at 575.  We have recognized the fundamental principles that "A criminal defendant may not be tried unless he is competent," and that "the competency requirement continues from the time of arraignment through sentencing." *Follett v. State*, 2006 WY 47, ¶ 8, 132 P.3d 1155, 1158 (Wyo. 2006).  In light of these principles, as the district court noted,

> It makes no sense that the Court would have the authority to order the involuntary medication of a person accused of a crime so that he could be made competent to stand trial for that crime, but after he is adjudicated guilty of and sentenced for that crime, the Court would lose the authority to order him to be involuntarily medicated so that the sentence imposed on

9

him could be carried out.

We agree that interpreting the statute to apply only in those instances in which the defendant appears before a jury, as Appellant suggests, would produce absurd results contrary to legislative intent. For the foregoing reasons, we conclude the district court did not err in ordering the involuntary administration of medication to restore Appellant's competency for the probation revocation proceedings.

[¶21] Affirmed.